In the Matter of CONDEMNATION BY THE CITY OF MINNEAPOLIS OF CERTAIN LANDS IN THE CITY OF MINNEAPOLIS for the Lyn/Lake Municipal Parking Lot Project.

No. C5–99–1996.

Supreme Court of Minnesota.

Aug. 16, 2001.

Jeffrey R. Brauchle, Sherry Davis White, Jeffrey R. Brauchle, P.A., for appellant, City of Minneapolis.

Sherman Winthrop, Thomas H. Boyd, Winthrop & Weinstine, P.A., for respondent, Joseph E. Commers Limited, Partnership.

Louis K. Robards, Jeffrey S. Thompson, Assistant Attorneys General, for Commissioner of Transportation, amicus curiae.

## OPINION

RUSSELL A. ANDERSON, Justice.

In this eminent domain action, the City of Minneapolis (City) acquired title to and possession of property belonging to Joseph E. Commers Limited Partnership (respondent) through a statutory quick take procedure. We are asked to determine if the City owes interest at the rate set for judgments (judgment interest) to respondent on funds the City deposited with the court incidental to its quick take of respondent's property. The district court denied respondent's request for judgment interest because it found that the deposited funds, although not requested by respondent, were available to respondent. The court of appeals reversed the district court concluding that the deposited funds were not available to respondent until the district court issued its order for their disbursement. We reverse the court of appeals and hold that the district court need not order disbursement of funds for those funds to be considered available for purposes of the rule allowing judgment interest until the funds become available to the property owner. We also hold that the district court's finding that the funds were available to respondent when deposited with the court is not clearly erroneous.

The City acquired respondent's property through statutory quick take procedures, which allow a condemning authority to acquire immediate title to and possession of property even before damages for the taking are determined. Minn.Stat. § 117.042 (2000). To effect a quick take, the condemning authority must pay the owner directly or deposit in court an amount equal to the condemning authority's approved appraisal of value for the property. *Id.* If payment is deposited with the court, the condemning authority may apply to the court for an order transferring title and possession of the property from the owner to the condemning authority. *Id.* Amounts deposited with the court are to be paid out under the direction of the court. *Id.* If the property owner contests the condemning authority's approved appraisal of value for the property, court-appointed commissioners determine the damage a property owner has sustained on account of the taking, Minn.Stat. §§ 117.075 (2000), 117.042, and any party may appeal to the district court from the commissioners' award of damages. Minn.Stat. § 117.145 (2000).

The eminent domain statute refers to two types of interest. One type of interest derives from the court administrator's

statutory obligation to deposit into an interest-bearing account amounts deposited with the court pursuant to the quick take procedure. Minn.Stat. § 117.042(b) (2000). The court administrator is required to pay the interest earned to the ultimate recipient(s) of the amount deposited. *Id.* The other type of interest is on an award of damages and is at the statutory rate of interest on judgments established in Minn. Stat. § 549.09 (2000). Minn.Stat. § 117.195, subd. 1 (2000). This interest is paid by the condemning authority. *See id.* We deal here only with a claim pursuant to Minn.Stat. § 117.195 for judgment interest pursuant to Minn.Stat. § 549.09 and not court administrator interest.

On November 3, 1998, the City deposited with the court quick take funds of $425,000 and acquired title to and possession of respondent's property. Respondent did not seek disbursement of the funds at that time. Court-appointed commissioners subsequently appraised damages for the City's taking of respondent's property at $520,000, and on May 17, 1999, the City deposited with the court an additional $95,000, the difference between the commissioners' award of $520,000 and the City's earlier quick take deposit of $425,000. The City also deposited with the court $2,180.75, which represents judgment interest on the $95,000 from November 3, 1998, the date of the City's quick take of the property, to May 17, 1999, the date of its deposit of $95,000 with the court. *See* Minn.Stat. § 117.195, subd. 1.

On May 27, 1999, almost 7 months after deposit of the initial $425,000, respondent petitioned the court to withdraw all of the deposited funds. The City interposed no objection, and the court ordered disbursement of the funds to respondent.

On August 11, 1999, respondent by motion requested that the court order the City to pay judgment interest to respondent on the $520,000 from November 4, 1998, the day after the City took possession of the property, to June 10, 1999, the date of hearing on respondent's petition to withdraw the funds.[1] The district court denied respondent's motion because it found that the funds were available to respondent during that time.

The court of appeals reversed the district court concluding that the City owed judgment interest on the deposited funds from the date the property was taken by the City to the date the district court ordered disbursement of the funds to respondent. *In re Condemnation by the City of Minneapolis*, 609 N.W.2d 923, 926 (Minn.App.2000). According to the court of appeals, the funds were not available to respondent until the district court issued an order for their disbursement because (1) the City could have paid the funds directly to respondent rather than depositing them with the court; (2) to withdraw the funds, respondent had to file a motion, incur expenses, and "overcome legal obstacles"; and (3) it was speculative as to whether an earlier motion to disburse the funds would have been granted. *Id.*

We first address the legal issue of whether a district court must order disbursement of deposited quick take funds for those funds to be considered available for purposes of the constitutional requirement that just compensation for the taking of private property must include judgment interest until the funds are available to the property owner. *See Ford Motor Co. v.*

---

1. Thus, respondent argued that in addition to the $2,180 in judgment interest on the $95,000 that the city had already paid, he was entitled to an amount representing judgment interest on the $95,000 from the date of the deposit (May 17, 1999) to the date of the hearing on respondent's petition to withdraw the funds (June 10, 1999).

*City of Minneapolis*, 143 Minn. 392, 395, 173 N.W. 713, 715 (1919). We then address whether the evidence supports the district court's finding that the funds were available to respondent.

## I.

■ The proper interpretation of the quick take statute in conjunction with the rule set forth in *Ford* presents a question of law, which we review de novo. *In re Estate of Janecek*, 610 N.W.2d 638, 641 (Minn.2000).

■ The federal and state constitutions mandate that just compensation be paid before the government takes private property under the power of eminent domain. U.S. Const. amend. V; Minn. Const. art. I, § 13. More than 80 years ago we held that just compensation includes interest on a condemnation award from the time of an award, which was also when the property was deemed taken by the condemning authority, until payment becomes available to the property owner. *Ford*, 143 Minn. at 395, 173 N.W. at 715 ("The just compensation required by the Constitution includes not only the amount of the final award but also the interest thereon from the date of the original award until the money becomes available to the landowner.").[2] *Ford* predated the quick take statute and did not involve a deposit of funds with the court. However, it is the *Ford* rule requiring interest as part of just compensation that is at issue in this case, specifically whether deposited quick take funds are available to the property owner for purposes of the *Ford* rule.

■ We considered whether a condemning authority must pay judgment interest on deposited quick take funds in *Fine v. City of Minneapolis*, 391 N.W.2d 853 (Minn.1986). In *Fine*, the district court directed the transfer of title to and possession of private property to the condemning authority under quick take proceedings. *Id.* at 854. The property owner, who remained in possession of the property, subsequently entered into a written agreement with the condemning authority. *Id.* The agreement continued the condemnation proceeding, reserved to both parties the right to appeal from any subsequent commissioners' award, allowed the property owner to continue in possession of the property upon payment of monthly rent to the condemning authority, and provided that the property owner was entitled to immediate receipt of the deposited quick take funds. *Id.* The district court approved the agreement and the property owner received payment of the quick take funds. *Id.* Later, the property owner brought an independent action seeking judgment interest from the date the district court directed the transfer of title and possession to the condemning authority to the date the funds were disbursed to the property owner. *Id.* at 854–55. We concluded that the award of interest was obviated by the property owner's immediate

---

**2.** The dissent dismisses the court's statement in *Ford* that interest should not be required for funds available to the landowner. As authority for the statement in *Ford* regarding availability we referred to cases including *Warren v. First Div. St. Paul & Pac. R.R. Co.*, 21 Minn. 424 (1875). In that case (not a quick take), we held that interest was payable from the date of filing the original commissioners' award "to the entry of judgment." *Id* at 427. While in both *Warren* and *Ford* the

narrow question presented was when interest began to accrue and not when accrual ended, in both cases we were required to instruct the district courts on remand how to compute the interest. In *Ford*, interest ceased accruing when the funds became available. 143 Minn. at 395, 173 N.W. at 715. In *Warren*, interest ceased accruing when judgment was entered. 21 Minn. at 427. Thus, disbursing payment to the property owner was not necessary for interest to cease accruing.

entitlement to the deposited funds. *Id.* at 856.

Respondent argues that our decision in *Fine* was based solely upon the written agreement between the parties that provided for the property owner's immediate entitlement to deposited funds. We disagree. We stated in *Fine* that, "As a practical matter, the deposit by the city of the $55,000 approved appraisal value and the owners' immediate entitlement to those funds obviates an award of interest on the deposited monies." *Id.* We did not say in *Fine,* nor did we imply, that the only basis for determining that deposited funds were available to the property owner was the written agreement. However, in *Fine* we also did not hold explicitly that the quick take funds became immediately available *because* they were deposited with the court. Thus, the question remains[3] whether deposited quick take funds are available for purposes of the *Ford* rule. 143 Minn. at 395, 173 N.W. at 715.

Because the process for payment for a quick take is governed by chapter 117, we look there for guidance on when deposited quick take funds become available to the landowner. The quick take statute states only that funds deposited with the court are paid out under the direction of the court. Minn.Stat. § 117.042. However, chapter 117 does address entitlement to judgment interest on commissioners' awards and amounts deposited with the court, which we construe in accord with the constitutional entitlement to judgment interest articulated in *Ford. See* Minn.Stat. §§ 117.155 (2000) (governing payments and partial payments pending appeal), 645.17(3) (2000) (establishing the presumption in ascertaining legislative intent that the legislature does not intend to violate the U.S. Constitution or state constitution).

Respondent argues that Minn.Stat. § 117.195 entitles him to judgment interest on the deposited quick take funds. The statute provides in part: "[a]ll damages allowed under this chapter, whether by the commissioners or upon appeal, shall bear interest from the time of the filing of the commissioners' report or from the date of the petitioner's possession whichever occurs first." Minn.Stat. § 117.195, subd. 1. Respondent argues that because the City had possession on November 3, 1998, it owed judgment interest from that day forward.

█ We do not find the statute so clear. First, the phrase, "damages * * * whether by the commissioners or on appeal," suggests that this provision applies only to amounts determined to be payable by the condemning authority through the commissioners' award or district court appeal. In contrast, the legislature elsewhere in chapter 117 specifically refers to "amounts deposited," which, although they may be encompassed within a final award of damages, are addressed separately. *See, e.g.,* Minn.Stat. § 117.155 (providing full or partial payment on an award pending appeal shall not draw judgment interest from date of "payment or deposit" and that "dam-

---

**3.** The statement in *Fine* relied upon by the dissent of Justice Gilbert does not support the dissent's conclusion that interest is owing on quick take deposited funds. Describing what would have happened in *Fine* in the absence of a settlement of all issues, the court stated, "[i]f the condemnation proceedings continued to a commissioners' award, interest was or should have been calculated according to section 117.195 and an award of interest on the deposit would represent a duplication, in whole or in part, of the interest factor in 'just compensation.'" 391 N.W.2d at 856. In this case, the condemnation proceedings did continue to a commissioners' award, and the judgment interest on that $95,000 award was calculated according to section 117.195. We see no conflict with the procedures used here and our discussion in *Fine.*

ages" shall be reduced by the amount of the payment);[4] Minn.Stat. § 117.042 (stating on quick take proceeding "amounts deposited," with court (not damages) paid out under the direction of the court). In *Fine*, we stated, "The [quick take] deposit does not represent an award of damages for the taking but only the condemnor's valuation of the property." 391 N.W.2d at 855. When the legislature meant to refer to amounts deposited in court, it did so explicitly using the term "amounts deposited" rather than "damages." Provisions in a statute must be interpreted in light of each other, and "the legislature must be presumed to have understood the effect of its words and intended the entire statute to be effective and certain." *Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 73–74, 93 N.W.2d 690, 698 (1958). The choice to refer specifically to "damages" in Minn. Stat. § 117.195, while not determinative, suggests that provision may not apply to amounts deposited with the court.

As noted, our decision in *Ford* requires just compensation "from the date of the original award until the money becomes available to the landowner." 143 Minn. at 395, 173 N.W. at 715. Respondent claims that funds are never available until the owner petitions for and obtains a court order disbursing the funds, citing a court of appeals decision, *In re Condemnation by the Minneapolis Cmty. Dev. Agency*, 447 N.W.2d 891 (Minn.App.1989) ("*MCDA*"), *rev. denied*, (Minn. Jan. 12, 1990). In *MCDA*, the condemning authority deposited quick take funds with the district court and the court ordered the court administrator to pay from the deposit any encumbrances on the property as of the transfer date. *Id.* at 892–93. The property owner promptly petitioned for disbursement of the funds but the district court denied the petition because of uncertainty regarding obligations associated with the property and ordered the funds transferred to a certificate of deposit. *Id.* at 893. Six months later, the court approved disbursement of the funds. *Id.*

On appeal, the court of appeals determined that the owner was entitled to judgment interest on the quick take funds from the date of the quick take deposit to the date the district court ordered disbursement of the funds to the property owner. *Id.* at 894. Drawing upon our analysis in *Fine*, the court of appeals concluded that the decisive factor in determining entitlement to judgment interest is availability of the funds, not the date of deposit. *Id.* at 893–94. Because the property owner's petition for disbursement of the funds had been initially denied by the district court, the funds were not available until the court granted the property owner's petition to disburse the funds. *Id.* at 893–94.

It does not follow, however, that funds are never available until a court orders disbursement. Rather, as the court of appeals stated in *MCDA*, if the funds are available and earning only court administrator interest, it is the landowner's responsibility to request them and then reinvest them at a higher rate. *Id.* at 894. In *Ford* we stated that just compensation includes interest until payment becomes available, not interest until the funds were received by the property owner. 143 Minn. at 395, 173 N.W. at 715. To allow judgment interest to accrue after deposit with the court allows a property owner to collect interest at public expense on depos-

---

4. We do not suggest, as the dissent claims, that section 117.155 dictates that interest not be paid on any deposited funds. We recognize that the provision above applies only to deposits or payments of funds refused by the property owner, and cite section 117.155 only to illustrate the distinction the legislature made in describing damages and deposited amounts.

ited funds that are available to the property owner but simply not requested, as is the case here. A property owner cannot wait indefinitely, at public expense, to claim deposited funds. We hold that for purposes of determining whether the condemning authority must pay judgment interest on deposited quick take funds under *Ford*, those funds do not become available only when the district court orders disbursement.

## II.

■ Finally, we consider whether the district court's factual finding that the funds were available upon deposit was clearly erroneous. We will not set aside a district court's findings of fact unless clearly erroneous. *Plath v. Plath*, 428 N.W.2d 392, 393 (Minn.1988).

■ The City made quick take deposits on nine parcels in the condemnation project, including respondent's property. Six of the property owners promptly moved the court to withdraw the funds. The City did not object to any of these motions and the court granted the motions. The City also did not object when respondent finally moved the court to disburse deposited funds for his property. A court likely would not abuse its discretion in awarding judgment interest for the period between notice of the taking and a timely motion for disbursement of the funds. Likewise, under particular circumstances a court may determine, without abusing its discretion, that funds did not truly become available after a timely petition until the court ordered the funds disbursed. However, because respondent did not timely petition the court for disbursement of the funds, those facts are not here present.

Instead respondent waited almost 7 months before seeking disbursement of the funds. There is no explanation in the record as to why respondent failed to promptly seek disbursement. In addition, respondent has presented no evidence that the court would have denied disbursement of the funds if requested earlier, as in *MCDA*, where judgment interest was awarded after a timely request for release of the funds was denied. 447 N.W.2d at 893–94. In fact, respondent states that at all times relevant he had "sole, exclusive, and unclouded" interest in the property, suggesting that there would have been no question as to his entitlement to the deposit. The absence of any record evidence suggesting funds would not be disbursed, coupled with respondent's claim to "sole, exclusive and unclouded interest" leaves us unable to conclude, as the court of appeals did, that earlier disbursement was speculative. *See In re Condemnation*, 609 N.W.2d at 926. The prompt disbursement of deposits for six similarly situated property owners and respondent's failure to demonstrate that the funds would not have been available if requested earlier leads us to conclude that the district court's factual finding was not clearly erroneous.[5]

We hold that a district court need not order disbursement of deposited quick take funds for those funds to be considered available for purposes of the *Ford* rule allowing judgment interest until the funds become available to the property owner. We also hold that the district court did not clearly err in finding that the funds were available to the property owner. Accordingly, the district court properly denied respondent's motion for interest and we reverse the court of appeals.

Reversed.

---

5. Our conclusion encompasses the determination that the $95,000 in additional funds paid by the City after the commissioners' award was available to respondent as of the date of the deposit. *See supra* note 1.

PAUL H. ANDERSON, Justice (dissenting).

I join in the dissent of Justice Gilbert and write separately to amplify my concern that the result of the majority opinion will be that property owners subject to eminent domain proceedings will be denied just compensation for the taking of their property. I have stated in a dissent to an opinion of this court that

> The state's ability to compel owners to relinquish property to the state for public purposes is a powerful intrusion upon the right to the quiet and peaceful ownership of property. * * * Both the United States Constitution and the Minnesota Constitution expressly limit the state's exercise of the eminent domain power by requiring the payment of just compensation. *See* U.S. Const. amend. V; Minn. Const. art. I, § 13. These constitutional safeguards are rooted in the idea that no single individual should be forced to bear the entire burden for the good of all.

> To insure that owners subject to the eminent domain power are made whole when their property is taken, legal safeguards have been established to ascertain the proper measure of damages.

*County of Anoka v. Blaine Bldg. Corp.,* 566 N.W.2d 331, 337 (Minn.1997) (Anderson, Paul H., J., dissenting).

Among the legal safeguards established to ensure that property owners are properly compensated is the requirement that when owners lose title and possession to property under eminent domain proceedings, they are entitled to money damages, *plus interest* on those damages. *Ford Motor Co. v. City of Minneapolis,* 143 Minn. 392, 395, 173 N.W. 713, 715 (1919). Here, the city took possession of respondent's property under a quick-take procedure, but rather than pay damages to respondent at the time of taking, the city deposit-ed the funds with the court. The city had the right to deposit the funds with the court and, once deposited with the court, the funds cannot be withdrawn without the permission of the court. Minn.Stat. § 117.042 (2000). There are numerous good policy reasons that underlie this deposit procedure, most of which are in place to protect the interests of the city as condemnor.

Without a doubt, the statutory scheme subject to our analysis lacks the clarity necessary for a simple answer. Nevertheless, the majority fails to appreciate the overall scheme that the legislature has instituted to protect a condemnee's constitutional right to just compensation while at the same time permitting a condemnor title and possession to the property subject to condemnation. The quick-take statutory scheme recognizes that for a multitude of reasons, a condemnor may need to acquire title and possession to the subject property before just compensation can be determined and before a final determination of the rights of all parties who may claim an interest in the property. However, to satisfy the constitutional just compensation requirements, a quick-take condemnor must pay the property owner directly or deposit in court an amount equal to the condemnor's approved appraisal of value for the property at the time title and possession of the property is taken. *Id.*

The requirement that the condemnor make payment to the property owner under the quick-take procedure has the potential of exposing the condemnor to the risk of excessive payment. For example, if payment is made directly to the putative property owner, there is a possibility that other interests in the property, such as those of a mortgagee or a lien holder, will remain unpaid. If such an interest is not paid, the condemnor could lack clear title

to the property and might be forced to pay additional funds in order to get clear title. To protect the condemnor from such a contingency, the legislature established the option of depositing the funds with the court. Once the funds have been deposited with the court, the funds can be distributed only under a court order. Payment under the supervision of the court helps to assure the condemnor that all valid interests in the property are compensated.

The legislature also understood that when funds are deposited with the court, there is the potential that no interest will be earned on the funds deposited by the condemnor pending resolution of title and other matters. Accordingly, the legislature established a procedure to protect the condemnor from the possibility that the deposited funds would earn no interest. It required that the court deposit the funds in an interest-bearing account. Minn.Stat. § 117.042(b) (2000). Thus, the condemnor is assured that pending resolution of matters surrounding the quick take, funds deposited with the court, but subject to court order for distribution, will earn interest. This protection is important to the condemnor because the just compensation that ultimately must be paid to the property owner includes interest.

The majority erroneously concludes that the interest rate on the funds deposited with the court is the benchmark for just compensation to be paid to the property owner. The majority takes a statutory provision that is in place to provide protection for the condemnor and uses it to establish the just compensation interest rate for the condemnee. I do not believe that this is what the legislature intended. As Justice Gilbert correctly points out in his dissent, the legislature has made specific reference to Minn.Stat. § 549.09 (2000)—the judgment rate of interest—as

the benchmark for just compensation for the condemnee.

The majority attempts to use Minn.Stat. § 117.155 (2000) to support its position, but its rationale is undermined by its own recognition that this statute applies only to those situations when a property owner refuses to accept payment after the award is available or upon completion of condemnation proceedings. I submit that there is a very logical purpose for Minn.Stat. § 117.155—to encourage acceptance of payment once available and to cause a recalcitrant condemnee to withdraw the funds. The situation contemplated by Minn.Stat. § 117.155 is very different from what we have before us today. Here, the funds deposited with the court were deposited to provide court-supervised protection for the interests of the condemnor. While either the condemnor or the condemnee can petition the court for release of the funds, the funds can be released only under the direction of the court. I fail to understand the majority's position that even though the funds cannot be released without court order, they are available to the property owner in the same sense contemplated under Minn.Stat. § 117.155.

The majority cites to three cases, *Ford; Warren v. First Division St. Paul and Pac. R.R. Co.*, 21 Minn. 424 (1875); and *Fine v. City of Minneapolis*, 391 N.W.2d 853 (Minn.1986), in support of its position. *Ford* and *Warren* are distinguishable because they operate under a statutory scheme different from the quick-take procedure and they deal with situations where funds clearly were available to the condemnee. In *Fine*, we did not address the issue before us. Despite this, the majority attaches to language in *Fine* referring to the "owner's immediate entitlement to funds." The majority has relied on statements made in *Fine* that do not address the specific question before the court and

has used this language to take us in a direction that is contrary to the statutory scheme put in place by the legislature. When we go in the direction taken by the majority, we deny property owners just compensation by failing to compensate them with the interest rate as mandated by the legislature. Therefore, I dissent.

PAGE, Justice (dissenting).

I join in the dissent of Justice PAUL H. ANDERSON.

GILBERT, Justice (dissenting).

I respectfully dissent from the majority opinion and would affirm the court of appeals. The majority has mischaracterized the issue. The issue is the rate of interest, not when interest ceases to accrue on deposited funds. The respondent in this case has merely requested its statutory interest on a judgment or award pursuant to Minn. Stat. § 549.09, subd. 1 (2000), with due credit given for all interest accumulated on deposited funds, and that is what respondent should receive. The majority opinion nullifies the statutory judgment/award rate of interest provision, Minn.Stat. § 549.09, subd. 1, requiring a condemning authority to pay a property owner interest on the commissioners' damage award from the date that petitioner takes possession of the condemned property, in favor of the statutory provision providing for interest earned on a quick-take deposit. *See* Minn. Stat. § 117.042(b) (2000).

The majority's conclusion does not conform with the basic rules of statutory construction. Apparently conflicting laws are to be construed together, if possible, to give effect to both provisions. Minn.Stat. § 645.26, subd. 1 (2000); *State ex rel. Beaulieu v. Indep. Sch. Dist. No. 624*, 533 N.W.2d 393, 396 (Minn.1995). Contrary to what the majority opinion holds, interest continues to accrue even after deposit. Section 117.042(b) provides in part that "[a]ll interest credited to the amount deposited from the date of deposit shall be paid to the ultimate recipient of the amount deposited." Thus, we must determine if the judgment or award interest rate is displaced by the deposit rate of interest rather than determine if all interest ceases to accrue upon deposit.

The majority supports its opinion with a new construction of the phrase "until the money becomes available to the landowner," contained in *Ford Motor Co. v. City of Minneapolis*, 143 Minn. 392, 395, 173 N.W. 713, 715 (1919). In *Ford*, we decided only the narrow question of whether interest is allowed on the final award from the date of the original award. *Ford* did not decide the issue before us now, nor did *Ford* hold as the majority states that "interest ceased accruing when the funds became available." In fact, *Ford* implies just the opposite. We stated in *Ford* that "[s]uch interest could not well be included in the final award as the full amount of interest could not be determined at that time." *Id.* at 396, 173 N.W. 713, 173 N.W. at 715.

Furthermore, the offset of value for the use of the premises against the interest found to be due in *Ford* would be similar to the offset of the interest earned on deposit from the total statutory judgment/award interest due on the final award due in this case. However, the majority holds that because of the above language in *Ford*, the statutory judgment/award interest ceases to accrue on money that the condemning authority elects to deposit with the clerk of the district court in an eminent domain proceeding pursuant to the quick-take statute, Minn.Stat. § 117.042, even though the property owner cannot access the quick-take portion of the damages until the district court directs the deposited funds to be disbursed.

The majority opinion avoids addressing the controlling part of Minn.Stat. § 117.195, subd. 1 (2000), which specifies the rate of interest to be determined according to section 549.09, subd. 1, and the interplay between that rate and the interest earned on deposit as provided in Minn. Stat. § 117.042(b) of the quick-take statute.[1] The statutory judgment/award interest section governs the interest calculation on condemnation awards and importantly, neither Minn.Stat. § 117.195, subd. 1, nor section 549.09 indicate that interest shall either be diminished or enhanced by the deposit of funds with the court administrator. When the statutory language is clear and unambiguous, we should follow the plain meaning of the statutes. Minn.Stat. § 645.16 (2000).

All damages allowed under this eminent domain proceeding were determined to be $520,000 by the commissioners, pursuant to an award dated May 19, 1999. On May 27, 1999, the respondent petitioned the court for release of these funds, and the funds were released at the hearing date on June 10, 1999. Therefore, the respondent argues that he is entitled to statutory interest on the entire award of $520,000 from November 4, 1998, the day following the condemning authority's possession date and date of the quick-take deposit with the court of $425,000, until June 10, 1999 (with credit for amounts earned on deposit).[2]

The majority opinion digresses into policy considerations of why money is deposited in the court on a quick-take to support its conclusion that interest then abates. The majority then concludes that "a district court need not order disbursement of deposited quick-take funds for those funds to be considered available for purposes of the *Ford* rule allowing judgment interest until the funds become available to the property owner." There is no present authority cited for such a notion, and it does not make practical sense. In the practical sense, this means that even though a respondent does not have use of the funds, statutory judgment/award interest would not accrue on the quick-take deposit. I would suggest that a delayed payment without full statutory judgment/award interest is in violation of both our constitutional and statutory requirements of just compensation.[3] The majority substitutes interest earned on deposit for the currently mandated statutory judgment/award interest without legislative authority to make that switch.

The majority also misconstrues Minn. Stat. § 117.155 (2000) in support of its reasoning. It interprets that statute to abate interest by stating "providing full or partial payment on an award pending appeal shall not draw judgment interest from date of 'payment or deposit' * * *." However, this abatement only occurs when a property owner "refuses to accept such payment" on appeal. *Id.* Here, the owner did not refuse to accept such payment but rather, the condemning authority deposited the money with the court. The majori-

---

1. "All damages allowed under this chapter, whether by the commissioners or upon appeal, shall bear interest from the time of the filing of the commissioner's [sic] report or from the date of the petitioner's possession, whichever occurs first. The rate of interest shall be determined according to section 549.09." Minn.Stat. § 117.195, subd. 1.

2. The city withheld disclosing its final appraisal value of $375,000, which was $50,000 less than the amount the city originally deposited with the court until March 2, 1999, the second day of the commissioners' hearing.

3. *See Warren v. First Div. St. Paul & Pac. R.R. Co.,* 21 Minn. 424, 427 (1875) (emphasizing just compensation and delayed payment in terms of "if paid").

ty's reliance on Minn.Stat. § 117.155 under these facts is misplaced.

The majority opinion also cites *Warren* for the proposition that "interest ceased accruing when judgment was entered." However, *Warren* addressed only prejudgment interest and required that interest computed from the date of filing the award to entry of judgment be added to the amount of the verdict. *See* 21 Minn. at 427. *Warren* does not support the majority's conclusion that interest then ceases to accrue and "[t]hus, disbursing payment to the property owner was not necessary for interest to cease accruing." *Warren* simply does not mention "disbursing payment" nor does it indicate when any payment was made to the landowner or whether funds were ever deposited in court.

The majority's use of *Fine v. City of Minneapolis*[4] to imply that there was some basis other than a written agreement to determine when deposited funds became available without the property owner actually receiving the funds is only another means used to rewrite Minn.Stat. § 117.195. In *Fine*, we specifically noted that "[n]o consideration or review was sought of the order directing the payment of [the quick-take deposit] without any added interest. Instead, * * * the Fines commenced this independent class action to recover interest on the funds originally deposited * * *." 391 N.W.2d at 854. Our holding in *Fine* was limited to the issue of whether " * * * the deposit with the court of an amount equal to the petitioner's approved appraisal of value pursuant to Minn.Stat. § 117.042 * * * did not give rise to a separate cause of action for interest on the deposited fund." 391

N.W.2d at 856. However, in this case, the respondent sought review of the precise issue not decided in *Fine:* accrued interest due on the quick-take deposit. In *Fine*, there was a settlement and no commissioners' award like we have in this case. *Id.*

The payment of statutory interest pursuant to Minn.Stat. § 117.195 on only the additional $95,000 awarded by the commissioners over and above the quick-take deposit does not eliminate the accrual of statutory interest on the quick-take deposit. In fact, our decision in *Fine* would require interest on the "final award from the date of the original award," in this case, the date of the quick-take deposit. *Ford,* 143 Minn. at 396, 173 N.W. at 715. The trial court should then determine the amount earned on deposit similar to determining the value of the use of the lands in question in *Ford* and "offset the value of such use against the interest." *Id.*

If there was a deposit, to the extent that there was interest earned on the deposit, the interest amounts paid to the ultimate recipient pursuant to Minn.Stat. § 117.042(b) would of course be an offset to the statutory interest rate mandated by Minn.Stat. § 117.195, subd. 1. That would require the court to make an equitable adjustment. If the city desired an earlier payout of the deposited funds, it also could have petitioned the court or paid them directly to respondent.[5] Construing these statutes this way would not only eliminate the concern for the duplication of interest factor we mentioned in *Fine,* 391 N.W.2d at 856, but also validate both Minn.Stat. § 117.195, subd. 1, and Minn.Stat. § 117.042(b), without having to choose one over the other. The legislature directs that when interpreting such potentially

---

4. 391 N.W.2d 853 (Minn.1986).

5. This case does not involve a situation as mentioned by the majority where a property

owner has waited indefinitely, at public expense, to claim deposited funds.

conflicting statutes, "the two shall be construed, if possible, so that effect may be given to both." Minn.Stat. § 645.26, subd. 1.

Accordingly, I would affirm the court of appeals and remand this case to the district court to determine the statutory interest amount with credit for interest earned on deposit.

PAUL H. ANDERSON, Justice (dissenting).

I join in the dissent of Justice GILBERT.