*In re* LANSING URBAN RENEWAL

(CITY OF LANSING v WERY)

1. EMINENT DOMAIN—CONDEMNATION—AMOUNT OF AWARD—GOOD WILL—UNIQUE BUSINESSES—UNIQUE LOCATIONS.

   Generally, no compensation is allowed for the going concern value or good will of a business operated on condemned realty, however, a court may properly consider good will as evidence of the value of the leasehold, or the capacity of the realty for use, under certain circumstances; such circumstances were present where a retail operation affected by a condemnation was found to be a unique operation in a unique location, it depended greatly on that location and any significant move would greatly impair its business, and the premises were adapted for a particular highly productive use in no way dependent on ownership by the particular defendants.

2. EMINENT DOMAIN—CONDEMNATION—INTEREST—DATE OF JUDGMENT —DATE OF TAKING.

   Condemnation awards are generally treated as are all other types of judgments on which interest begins to accumulate on the date of judgment; however, where there has been a taking of property during the pendency of the proceedings, interest is allowed from the date of taking.

3. EMINENT DOMAIN—CONDEMNATION—STATUTES—ADVANCE PAYMENTS—INTEREST.

   A condemnation proceeding brought under provisions applicable to eminent domain for general public purposes, in which an advance payment is made by the condemning municipality, alters the case law doctrine that interest be paid from the date of a prejudgment taking; interest in such a case is computed on the amount by which the judgment award exceeds the advance and begins to run on the date on which possession is surrendered (MCLA 213.381; MSA 8.261[21]).

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 27 Am Jur 2d, Eminent Domain § 375 *et seq.*

4. EMINENT DOMAIN—CONDEMNATION—AMOUNT OF AWARD—FUTURE
PROFITS.
    A condemnation award which is within the maximum and mini-
    mum estimates of the value of the property set by the parties is
    not clearly erroneous; loss of future profits is not a separately
    compensable item of damages.

Appeal from Ingham, Donald L. Reisig, J. Submitted January 12, 1976, at Lansing. (Docket No. 23218.) Decided March 24, 1976. Leave to appeal denied, 397 Mich 828.

Petition by the City of Lansing to condemn real estate owned by Francis J. Wery and others. Petition granted. Both plaintiff and defendants Bret Riley, Cygred Riley, Gladys Bowlin, and Russell Weston appeal. Affirmed, but remanded for recomputation of interest on the award.

*Bruce S. King,* for plaintiff.

*Sinas, Dramis, Brake, Turner, Boughton & McIntyre, P. C., Farhat, Burns & Story, P. C.,* and *Newman & Mackay, P. C.,* for defendants.

Before: N. J. KAUFMAN, P. J., and DANHOF and T. M. BURNS, JJ.

N. J. KAUFMAN, P. J. Both parties appeal from a condemnation award in the amount of $184,127 rendered after a bench trial by the Ingham County Circuit Court. A jury had been impaneled but was, thereafter, waived by both parties.

The property in question is located at 115 W. Shiawassee Street in Lansing. At the time of the taking, it was improved by a one-story building which housed the Kewpee Hamburger Shoppe. The property has been owned by defendants Riley since 1924. Defendants Bowlin and Weston and their families have continuously leased the property

from the Rileys and operated the Kewpee Hamburger Shoppe since 1924. Under the most current lease, the lessees paid $65 per week plus taxes, utilities, insurance and maintenance. The nature of the business was described in the trial court's opinion as:

"a unique 'hamburger shop,' which had a wide reputation for both the quality of its product and quickness of service. The 'Kewpee' was a 'downtown institution' lying on the fringe of the central business district within easy walking distance from the State Capitol, the commercial center of Lansing, and the ever-growing Lansing Community College. Its drive-in window operation also provided a facility for those who wanted a 'good hamburger' to drive in throughout the day and evening hours.

\* \* \*

"The basic costs of this business were excellent. They reflected good controls, careful pricing and competent management. The restaurant had produced substantial profit during the period when other operations were suffering from competition from the new wave of fast-food franchises."

Defendants made several efforts to relocate after they were notified of the condemnation. One branch of the Lansing city government would make an offer, but another branch would prevent the relocation. In one case, necessary rezoning was denied. In another, defendants attempted to rent space in a city parking ramp, but the city would not rent less than 4000 square feet fronting on Shiawassee Street. This meant a difference in rent of $14,000 over the present site. An attempt to erect another building was defeated when the city decided to use the desired space for a parking facility.

All of the experts who testified as to the value of

the leasehold portion of the condemned property utilized the "income" method of appraisal. This method is determined by capitalizing the landlord's net income. The estimates varied depending on the factors used in determining net income and on the capitalization rate utilized. The leasehold value was then added to the value of the land itself. One of plaintiff's experts placed the property value at $51,599; the other decided on a figure of $51,264. One of defendants' appraisers, who did consider the worth of the business, valued the property and improvements at $83,000. Defendants' other appraiser, Gedrich Management Company, used a number of approaches to estimate the property's value. Gedrich's estimates ranged from $169,486 to $202,897. Gedrich used one other approach by which he calculated the real damage caused to the leasehold interest by the fact that Kewpee's would be unable to relocate in a facility where it would have the same earnings. By multiplying the estimated average yearly loss by the owner's life expectancy, a figure of $594,457 was determined.

The wide variance in estimates resulted from the amount of consideration given to actual profits. The approach relied upon by the plaintiff is solely based upon the economic value of the leasehold. The yearly income that would be produced by the lease is determined by taking a percentage of the *gross sales* of the business. Necessary adjustments are made to this figure and it is then capitalized to determine the total value of the leasehold or the fair market value. It should be noted that the profit of the restaurant is not at all a factor in this computation. Although the gross sales of the restaurant are used, the figures arrived at by the plaintiff's experts would be the same whether the

restaurant owner was taking home 10% of the gross sales as a net profit or 20% of the gross sales as a net profit.

The approach as presented by Gedrich Management on behalf of the defendants, however, does, in one way or another, reflect the actual profit made by the restaurant. Under the income approach the basic figure is determined by using the gross income of the business for computations. However, the capitalization rate chosen, unlike the rate chosen by the plaintiff, was chosen with the profitability of the business in mind. Because of the "longevity" of the particular business and the "particular location with the success of said business", Gedrich used a capitalization factor of six rather than the multiple of four used in like businesses.

The trial court rejected plaintiff's estimates and set the property value at $184,127, a figure in the middle of Gedrich's first series of estimates. In his opinion, the court makes it clear that he rejected plaintiff's estimates because they did not consider the profits of the restaurant:

"Plaintiff's approach in this regard clearly fails to consider the entire parcel of property, its unique location, and particular uses for which it is adapted. Though Plaintiff contends the hypothetical percentage sales formula for rental is actually a greater amount than the fee owner was receiving in rentals, such contention, at the same time, fails to recognize that the particular business being operated thereon was producing a net revenue of almost 25 per cent of its total gross sales. The ultimate, illogical nature of Plaintiff's appraisal is demonstrated by the fact that the total value placed by appraiser Novakoski on the fee exceeds only by a few thousand dollars the *average annual* earnings of the business for the period 1964 to 1968." (Emphasis in original.)

## I.

On appeal, plaintiff's first allegation of error is that the trial court's award was legally erroneous because the court included the going concern value, or good will, in its determination of the condemned property's worth. Plaintiff bases this assertion on *Detroit v Whalings, Inc*, 43 Mich App 1; 202 NW2d 816 (1972), *lv den* 388 Mich 813 (1972). Defendants respond that the inclusion of going concern value was authorized by the case of *State Highway Commission v L & L Concession Co*, 31 Mich App 222; 187 NW2d 465 (1971). While the trial court did not specifically use the term "goodwill" in assessing value of the condemned property, it did, in fact, consider such an item. In its opinion, the court stated:

"This Court is convinced that Defendant property owners and lessees had a valuable right in the undisturbed possession of the real estate, a right which had value without reference to the lease itself or the length of the lease."

In most cases, no compensation is allowed for such a going concern value of a business operated on the condemned realty. *In re Edward J Jeffries Homes Housing Project*, 306 Mich 638, 651; 11 NW2d 272 (1943), *State Highway Commission v L & L Concession Co, supra* at 229. The *L & L* case, however, held that, in certain circumstances, the going concern value may be recovered as an element of damages separate from the leasehold value. Plaintiff in *L & L* had an exclusive concession at a race track which the state condemned. In ruling that the loss of this concession could create recoverable damages, the Court stated:

"where the value of the leasehold as an estate in land

and the value of the business there conducted cannot readily be separated, the valuation ascribed to the leasehold may reflect the value of the business there operated. In such a case it is entirely sound to refuse to award as a separate element of damages anything for loss of going-concern value or goodwill; to do so would be redundant. But where the valuations of the estates of the lessor and of the lessee in land do not reflect the going-concern value of the lessee's business there operated, then, * * * the going-concern value can, without making the total damages awarded redundant, and, if full compensation is to be paid, must be determined and awarded to a businessman *whose business has been destroyed by the taking.*" 31 Mich App at 234–35. (Emphasis supplied.) (Footnote omitted.)

In *Detroit v Whalings, supra,* this Court limited the *L & L* holding. Whalings sought compensation for the loss of a building which had housed one of its stores for over 100 years. The Court held *L & L* inapplicable. It stressed the fact that, in *L & L,* the plaintiff's "value as a going concern derived not so much from the quality of its product and service as from its monopolistic position". 43 Mich App at 9. Two specific differences between the position of Whalings and that of L & L were delineated:

"[F]irst, Whalings' *going-concern value* does not derive *primarily from its location;* it does not enjoy a monopoly, and its customers are not a captive audience.

\* \* \*

"Second, the *possibility of finding a suitable location nearby with the same or nearly the same convenience factors* is not foreclosed by reason of the condemnation herein." *Id.* at 9–10. (Emphasis supplied.)

We hold that the trial court did not err in considering the going concern value of Kewpee's in determining the condemnation award. While we find the facts in *L & L* similar to the instant case,

we do not find *L & L* dispositive. In *L & L,* good will was considered a separate element of damages. Here, it was deemed part of the value of the leasehold. We hold that, where special facts similar to those present in *L & L* exist, a court may properly consider goodwill as evidence of the value of the leasehold or the capacity of the realty for use. See Anno., *Good Will or "Going Concern" Value as Element of Lessee's Compensation for Taking Leasehold in Eminent Domain,* 58 ALR3d 566, § 4, p 573–576.

As the trial court in the instant case specifically found, the Kewpee Hamburger Shoppe was a unique operation in a unique location. It depended greatly on that location, and any significant move would so greatly impair its business as to nearly destroy it. The trial court found, further, that "[t]he premises were adapted for a particular highly productive use *no way dependent on ownership by these particular defendants".* (Emphasis in original.) The importance of Kewpee's business location is underscored by the fact that, notwithstanding numerous attempts, the parties could not obtain a location remotely comparable to the one condemned.

## II.

Plaintiff's second appellate claim of error is that the trial court erred in holding that interest on the condemnation award be computed from July 3, 1968, the date on which the condemnation action was filed. After interlocutory litigation, on January 18, 1972, the trial court entered an order for immediate possession and required the advance of an estimated just compensation, $47,000. This advance was paid on January 28, 1972. The lessees of the building remained in physical possession until

April 1, 1973, pursuant to a lease with plaintiff entered into on January 18, 1972.

The instant condemnation was brought under 1945 PA 344; MCLA 125.71 *et seq.;* MSA 5.3501 *et seq.,* a law authorizing blighted area rehabilitation. Section 3 of the law, MCLA 125.73; MSA 5.3503, provides for the use of condemnation but the law contains no procedural guidelines for such measures. The only guidance is offered in § 5, MCLA 125.75; MSA 5.3505, which provides that the:

"local legislative body may institute and prosecute proceedings under the power of eminent domain in accordance with the *laws of the state* or provisions of any local charter relative to condemnation." (Emphasis supplied.)

In general, case law has equated condemnation awards with all other types of judgments on which interest begins to accumulate on the date of judgment. *Campau v Detroit,* 225 Mich 519; 196 NW 527 (1923), *Friedt v Detroit,* 343 Mich 610; 73 NW2d 211 (1955). Where, however, there has been a taking of property during the pendency of the proceedings, interest is allowed from the date of taking. *In re Petition of State Highway Commissioner,* 279 Mich 285; 271 NW 760 (1937), *State Highway Commissioner v Rowe,* 372 Mich 341; 126 NW2d 702 (1964). This authority would appear to validate the trial court's ruling in the instant case.

However, the instant proceeding was brought under the provisions applicable to eminent domain for general public purposes, 1966 PA 295; MCLA 213.361 *et seq.;* MSA 8.261(1) *et seq.* The advancement by plaintiff of the estimated compensation was made pursuant to MCLA 213.369; MSA 8.261(9). This statutory advance alters the case law doctrine that interest be paid from the date of a

pretrial judgment taking. Pursuant to MCLA 213.381; MSA 8.261(21):

"Where there has been a prior declaration of taking, interest on the judgment shall commence at the time fixed by the court for the surrender of possession of the property and shall be computed on the amount by which the judgment exceeds the amount deposited pursuant to section 9. [MCLA 213.369; MSA 8.261(9)].

\* \* \*

"Interest shall be computed on the amount by which the judgment exceeds the amount deposited pursuant to section 9."

Interest, therefore, should have been computed on the amount by which the award exceeded the advance and should have begun to run as of January 18, 1972, the date on which plaintiff was awarded possession.

### III.

On cross-appeal, defendants claim that the court's award was improper because it did not set the award at the amount of potential income which defendant restaurant owners would have lost if they had been able to relocate to the next best available location. We disagree. The award was within the maximum and minimum estimates set by the parties and was not clearly erroneous. *Muskegon v DeVries,* 59 Mich App 415; 229 NW2d 479 (1975), *lv den* 394 Mich 787 (1975). Further, loss of future profits has been held not to be a separately compensable item of damages. *In re Park Site on Private Claim 16, Detroit,* 247 Mich 1, 4; 225 NW 498 (1929).

This case is remanded for recomputation of interest consistent with the dictates of this opinion. In all other respects, the trial court is affirmed. No costs, neither party having prevailed in full.