**HOUSING AND REDEVELOPMENT AUTHORITY OF THE CITY OF ST. PAUL, Petitioner, Respondent,**

v.

**Geraldine M. LAMBRECHT, et al., Respondents Below,**

**W.O.A.M., Inc., et al., Respondents Below,**

**Hoyt Development Company, et al., Respondents Below,**

**Shannon Kelly's, Inc., Appellant.**

**No. C7–01–1919.**

Court of Appeals of Minnesota.

May 21, 2002.

---

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN; and John F. Bannigan, Jr., Patrick Kelly, Kelly & Fawcett, P.A., St. Paul, MN, for appellant.

Marc J. Manderscheid, Lisa M. Agrimonti, Briggs and Morgan, St. Paul, MN, for respondent Housing and Redevelopment Authority.

Considered and decided by RANDALL, Presiding Judge, SCHUMACHER, Judge, and KLAPHAKE, Judge.

## OPINION

R.A. RANDALL, Judge.

In this condemnation dispute, appellant Shannon Kelly's, Inc., challenges the district court's order (1) requiring appellant to repay respondent Housing and Redevelopment Authority of the City of St. Paul ("HRA") $100,000 under Minn.Stat. § 117.155 and (2) dismissing appellant's claim for loss of going-concern value because it misapplied *City of Minneapolis v. Schutt,* 256 N.W.2d 260 (Minn.1977). The HRA also argues that the district court erred in not awarding it prejudgment interest.

## FACTS

On July 30, 1997, the HRA, by resolution, provided for the acquisition of "Block 39" in St. Paul, which contains all the property on the block in downtown St. Paul bounded by Fourth, Fifth, Wabasha,

and St. Peter Streets. In December 1997, the district court granted the HRA's petition for condemnation of Block 39. At the time of the condemnation, Shannon Kelly's Inc., operating as Shannon Kelly's Brew Pub, was a tenant on the property at 395 Wabasha Street, also designated as Parcel 1 in Block 39. Shannon Kelly's operated a bar-restaurant at the location since March 1990. James H. McGovern was president and principal shareholder of Shannon Kelly's.[1] On October 20, 1997, Shannon Kelly's and Hoyt Development Company entered into a written agreement to lease the property from Hoyt for a term of five years.

On February 5, 1998, Shannon Kelly's entered into an agreement with the HRA, whereby Shannon Kelly's received $100,000 in consideration for its interest in the fixtures and leasehold improvements. And one day later, on February 6, 1998, pursuant to the court's December 1997 order that authorized transfer of title upon payment or deposit of funds, the HRA deposited funds with the court administrator. The HRA's affidavit accompanying the funds detailed the appraiser's value of Parcel 1 and the property's fixtures: the land and improvements were valued at $520,000, and the fixtures were valued at $272,504. The affidavit also noted that Shannon Kelly's had received a $100,000 advance from the HRA and that the HRA deducted that amount from the deposit.

In July 1999, the court-appointed commissioners determined that the award for Parcel 1 should be $700,000 for the value of the real estate, $263,000 for the value of the trade fixtures, and $77,000 for the going-concern value, for a total award of $1,040,000. In August 1999, Shannon Kelly's appealed the award of the commissioners, asserting that the damages awarded did not constitute just compensation for the taking. Hoyt also appealed the award, asserting that the damages were inadequate compensation and that the award failed to allocate all condemnation proceeds to Hoyt. The HRA cross-appealed, claiming the award was in excess of the fair market value of the property, was contrary to evidence presented at the commissioners' hearing, and improperly included an amount for loss of going-concern value when no such loss was established at the hearing.

On December 29, 2000, the district court granted HRA's motion for partial summary judgment and determined that Shannon Kelly's could not state a claim for loss of going concern. In April 2001, the district court concluded that the lease between Shannon Kelly's and Hoyt precluded recovery for the fixtures by Shannon Kelly's. The court also noted that Shannon Kelly's released and assigned its malpractice claim against its attorney for any settlement or judgment proceeds it might obtain in the condemnation proceedings, and as a result, Shannon Kelly's received $174,817.43 in the fall of 1999 from Minnesota Lawyer's Mutual and received indemnity for up to $100,000 if Shannon Kelly's was required to repay any part of the $100,000 advance.

On June 29, 2001, after a trial on the valuation issue, a jury found in favor of Hoyt and against the HRA in the amount of $850,000. After the jury verdict, the HRA moved the trial court to enter judgment against Shannon Kelly's for $100,000

---

1. In July 1997, Shannon Kelly's was a tenant of W.O.A.M., Inc., which was a contract for deed purchaser from the fee owners. The fee owners of the property were Geraldine M. Lambrecht, James L. Lambrecht, Lillian J. Patoile, Geraldine Jenny Graves, Leonard J. Graves, Earl J. Jenny, and Doris O. Jenny. McGovern owned 25% of the equity of W.O.A.M. and was its chief executive officer. W.O.A.M. entered into a purchase agreement to sell the property to Hoyt Development Company, and Shannon Kelly's leased the property from Hoyt.

under Minn.Stat. § 117.155 (2000). The district court granted the HRA's motion on August 31, 2001, and judgment was entered on October 5, 2001. The court concluded that HRA paid Shannon Kelly's $100,000 as an advance on its claim for trade fixtures, and, because of the April 2001 order, Shannon Kelly's was not entitled to any part of the advance. The court determined that the language of Minn. Stat. § 117.155 was clear, and, thus, required the court concluded it was to "enter judgment in the original condemnation action in favor of the condemnor for the amount owed in excess of the award as finally determined." In the August 31, 2001, order, the district court also denied HRA's motion for prejudgment interest, concluding that the HRA is not entitled to interest when it seeks reimbursement of an overpayment.

Shannon Kelly's appeals from the district court's December 29, 2000, order and the August 31, 2001, order and corresponding judgment. The HRA appeals the court's denial of prejudgment interest in the August 31, 2001, order.

## ISSUES

I. Did the district court err in determining that the HRA was entitled to return of the $100,000 it advanced to Shannon Kelly's under Minn.Stat. § 117.155 (2000)?

II. Did the district court err by not awarding the HRA prejudgment interest?

III. Did the district court err in granting the HRA's motion for partial summary judgment that dismissed Shannon Kelly's claim for loss of going concern value?

## ANALYSIS

### I. Return of $100,000 Advance

■ Shannon Kelly's argues that the district court erred in concluding that

Minn.Stat. § 117.155 (2000) authorizes the return of the $100,000 advance to the HRA.

■ The construction of a statute is a question of law and reviewed de novo by an appellate court. *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). Minn.Stat. § 117.155 provides for payment and partial payment pending appeal:

Except as otherwise provided herein payment of damages awarded may be made or tendered at any time after the filing of the report; * * *. If either the petitioner or any respondent appeals from an award, the respondent or respondents * * * may demand of the petitioner a partial payment of the award pending the final determination thereof, and it shall be the duty of the petitioner to comply with such demand and to promptly pay the amount demanded but not in excess of an amount equal to three-fourths of the award of damages for the parcel which has been appealed, less any payments made by petitioner pursuant to section 117.042; * * *. A partial or full payment as herein provided shall not draw interest from the condemner from the date of payment or deposit, and upon final determination of any appeal the total award of damages shall be reduced by the amount of the partial or full payment. If any partial or full payment exceeds the amount of the award of compensation as finally determined, upon petitioner's motion, final judgment must be entered in the condemnation action in favor of the petitioner in the amount of the balance owed to the petitioner and is recoverable within in the original condemnation action.

Minn.Stat. § 117.155 was amended in 1997. The last sentence was added to the statute and the following was deleted:

If any partial or full payment exceeds the amount of the award of compensation as finally determined, the petitioner shall have a claim against the respondents receiving such payment for the amount thereof, to be recoverable in the same manner as in any civil action.

Minn.Stat. § 117.155 (1996). The amendment eliminated the requirement that the condemning authority initiate a civil action to recover overpayments and instead provided that the condemning authority could recover overpayment in the original condemnation action.

Shannon Kelly's argues that the $100,000 paid to it was not paid pursuant to Minn.Stat. § 117.155 and was not paid because of the commissioners' award but rather was made in consideration of Shannon Kelly's voluntary agreement to immediately convey its entire interest in the fixtures. We disagree.

The record shows that the agreement between Shannon Kelly's and the HRA was an advance as contemplated by Minn. Stat. § 117.155. The February 5, 1998, agreement states:

[t]he payment acknowledged above is accepted as an advance against, and shall constitute credit against, total compensation to which [Shannon Kelly's] may ultimately establish it is entitled under applicable law for the loss of its interest in the Fixtures as a result of the acquisition of the Property by the HRA.

Under the plain language of the agreement, the $100,000 was an advance on Shannon Kelly's condemnation compensation. Even if we were to look beyond the agreement itself, which we have found unambiguous, the record supports only one conclusion: Shannon Kelly's considered the $100,000 an advance before and after the parties entered into the agreement. Shannon Kelly's attorney sent a letter to the HRA setting forth Shannon Kelly's claim for relocation expenses and reimbursement for its trade fixtures. The last line of the letter states, "Consider this as a request for an advance payment toward the termination of that claim." In an affidavit submitted to the court dated February 19, 1998, McGovern stated he "received an advance payment of $100,000 towards the ultimate settlement of the valuation of said trade fixtures."

The district court determined that Shannon Kelly's was not entitled to compensation for the fixtures, and Shannon Kelly's did not appeal that determination. Shannon Kelly's received $100,000 for the fixtures. Accordingly, under Minn.Stat. § 117.155, the HRA is entitled to judgment against Shannon Kelly's for $100,000.

■ Shannon Kelly's asserts that Minn. Stat. § 117.155 only applies to return of payments made after a commissioners' award, and, thus, any payments made by the HRA before the commissioners' award could not fall under the statute. Shannon Kelly's supports its position by focusing on the language that "damages awarded may be made or tendered at any time after the filing of the report" and asserting that the "filing of the report" means the commissioners' award. The argument of Shannon Kelly's is that the phrase "after the filing of the report" is literal, limits timeframes, and has to be narrowly interpreted. Although "report" is not defined, even presuming it is the commissioners' award, it does not follow that that time limitation applied to the last sentence of the statute narrowly controls return of overpayments. The last sentence in the statute provides for the return of overpayments "[i]f *any* partial or full payment exceeds the amount of the award of compensation as finally determined * * *." Minn.Stat. § 117.155 (emphasis added). Thus, return of *any* overpayment is not limited to payments made after the commissioners' award.

We also recognize that Minn.Stat. § 117.155 provides a mechanism whereby

a property owner can obtain partial payment for the taking due to condemnation pending an appeal of the commissioners' award. Here, the commissioners' award was dated July 13, 1999, one year and six months after the HRA deposited funds with the court and received title to the property. Shannon Kelly's interpretation is at odds with the obvious purpose of the statute, allowing property owners to obtain partial payment for the taking pending resolution of the valuation issue. Under Shannon Kelly's interpretation, the HRA would be discouraged from entering into early agreements providing for advance payments to property owners; the HRA would wait until the commissioners' award is filed before making any advance payments or payments directly to the property owners under the quick take statute.[2] Shannon Kelly's interpretation also results in an obvious windfall to Shannon Kelly's at the expense of the HRA.

█ Finally, the HRA asserts that Shannon Kelly's does not have standing to challenge this ruling because it will be indemnified to the loss of the advance. But the HRA cites no case for the proposition that when one may be indemnified, he losses standing on appeal to contest the loss. Accordingly, we find the HRA's argument to be without merit.

## II. Prejudgment Interest

HRA argues the district court erred in concluding that the HRA was not entitled

to prejudgment interest on the $100,000 award. Minn.Stat. § 117.195 (2000) provides for interest in eminent-domain proceedings under Chapter 117:

> All damages allowed under this chapter, whether by the commissioners or upon appeal, shall bear interest from the time of the filing of the commissioner's report or from the date of the petitioner's possession whichever occurs first. The rate of interest shall be determined according to section 549.09. * * *

Minn.Stat. § 549.09, subd. 1(b) (2000) provides:

> *Except as otherwise provided by contract or allowed by law,* preverdict, preaward, or prereport interest on pecuniary damages shall be computed as provided in clause (c) from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first, except as provided herein. * * *

(Emphasis added). The district court concluded that because the legislature did not provide for interest in Minn.Stat. § 117.155, HRA was not entitled to interest on the overpayment. We agree.

█ "Interest on awards in eminent domain proceedings is entirely controlled by statute." *State by Mondale v. Gannons Inc.,* 275 Minn. 14, 25, 145 N.W.2d 321, 330 (1966) (applying predecessor stat-

2. Statutory quick-take procedures under Minn.Stat. § 117.042 (2000) allow a condemning authority to acquire immediate title to and possession of property even before damages for the taking are determined. *In re Condemnation by City of Minneapolis,* 632 N.W.2d 586, 587 (Minn.2001). To effect a quick take, the condemning authority pays the owner directly or deposits funds with the court equal to the condemning authority's approved appraisal of value of the property.

*Id.* After payment is deposited with the court, the condemning authority may apply to the court for an order transferring title and possession of the property to the condemning authority. *Id.* If the property owner contests the appraisal, the court appoints commissioners to determine the damage a property owner has sustained, and any party may appeal the commissioner's award to the district court. *Id.*

ute). Minn.Stat. § 117.195, subd. 1 (2000), provides for interest on damages allowed under chapter 117 (condemnation awards). This interest is "on an award of damages and is at the statutory rate of interest on judgments established in Minn.Stat. § 549.09" and is "paid by the condemning authority." *In re Condemnation by City of Minneapolis,* 632 N.W.2d 586, 588 (Minn.2001) (citation omitted). Return of an overpayment, although authorized by Minn.Stat. § 117.155, does not constitute an award of "damages" under chapter 117. Because interest on condemnation awards is controlled by statute, and the legislature has not provided for prejudgment interest upon return of an overpayment or advance, the district court did not err by concluding the HRA is not entitled to prejudgment interest under the statute.

### III. Loss of Going–Concern Value

■■ Shannon Kelly's asserts that the district court erred in its December 2000 order by grating summary judgment in favor of HRA, dismissing Shannon Kelly's claim for going-concern damages, and concluding that, as a matter of law, Shannon Kelly's did not satisfy the two-part test set forth in *City of Minneapolis v. Schutt,* 256 N.W.2d 260 (Minn.1977). Shannon Kelly's argues that it presented sufficient evidence to establish that a genuine issue of material fact exists as to whether the two-part *Schutt* test was satisfied, and, therefore, it is entitled to a jury trial on the issue of any loss of going-concern damages. We agree.

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990) (citation omitted). A court shall grant a motion for summary judgment "when the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). A reviewing court need not defer to the district court's application of the law when the material facts are not in dispute. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989). In determining whether a genuine issue of material fact exists, the reviewing court must view the evidence in a light most favorable to the non-moving party. *Offerdahl v. Univ. of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

■■■ "The federal and state constitutions mandate that just compensation be paid before the government takes private property under the power of eminent domain." *In re Condemnation by City of Minneapolis,* 632 N.W.2d at 589 (citing U.S. Const. amend. V; Minn. Const. art. I, § 13). Going-concern value relates to the goodwill value of a business. *See Roth v. Roth,* 406 N.W.2d 77, 80 (Minn.App. 1987) (stating goodwill value is transferable property generally defined as amount willing buyer would pay for going concern above book value of assets). The general rule "is that in nearly all cases the lessee is not entitled to recover compensation for loss of 'going-concern' value as part of a condemnation award." *Schutt,* 256 N.W.2d at 261–62. But courts will permit compensation for loss of going-concern value

where the holder of the interest to be lost by condemnation can show (1) that his going-concern value will in fact be destroyed as a direct result of the condemnation, and (2) that his business either cannot be relocated as a practical

matter, or that relocation would result in irreparable harm to the interest.

*Id.* at 265.

In *Schutt,* the supreme court cited with approval and discussed several Michigan cases, including *City of Lansing v. Wery,* 68 Mich.App. 158, 242 N.W.2d 51 (1976); *City of Detroit v. Whalings, Inc.,* 43 Mich. App. 1, 202 N.W.2d 816 (1972); and *Michigan State Highway Comm'n v. L & L Concession Co.,* 31 Mich.App. 222, 187 N.W.2d 465 (1971).

In *L & L,* the Michigan Court of Appeals concluded that condemnation of a racetrack where an exclusive concession was located could create compensable going-concern damages for the concession-stand operator. *L & L,* 31 Mich.App. at 239, 187 N.W.2d at 474. The court determined that the value of the concession flowed "from locational advantage and *L & L*'s monopoly position at that location, not conventional customer goodwill." *Id.* at 233, 187 N.W.2d at 470. Two years later in *Whalings,* the court determined that going-concern value was not compensable for the condemnation of a building that contained a men's clothing store for more than 100 years. *Whalings,* 43 Mich.App. at 2, 11, 202 N.W.2d at 817, 821. The court stressed that the clothing store's going-concern value depended "at least as much on the quality of its operation as on its location," but in *L & L,* the value "derived no so much from the quality of its products and service as from its monopolistic position." *Id.* at 9–10, 202 N.W.2d at 820–21. Finally, in *Wery,* a hamburger shop had leased the condemned property since 1924. *Wery,* 68 Mich.App. at 159, 242 N.W.2d at 52. The court considered *L & L* and *Whalings* and concluded that while not dispositive, *L & L* was similar to the hamburger shop. *Id.* at 164–65, 242 N.W.2d at 54. The court recognized that "[i]n most cases, no compensation is al-lowed for * * * a going concern value of a business operated on condemned realty." *Id.* at 163, 242 N.W.2d at 54. But the court found the hamburger shop

[w]as a unique operation in a unique location. It depended greatly on that location, and any significant move would so greatly impair its business as to nearly destroy it.

*Id.* at 165, 242 N.W.2d at 55. More recently, this court summarized the differences among *L & L, Wery,* and *Whalings:*

The *L. & L. Concession* and *Wery* courts allowed recovery where the going-concern value was firmly bonded to the location rather than to the particular owners or service providers. The *Whalings* court did not allow recovery, however, where location was secondary, despite the fact no suitable relocation sites were readily available.

*In re Condemnation by Minneapolis Cmty. Dev. Agency,* 488 N.W.2d 319, 321 (Minn.App.1992) (citations omitted), *review denied* (Minn. Sept. 15, 1992). We find *Wery* supports a conclusion that a fact issue exists in the present case.

Here, Shannon Kelly's asserts that its going-concern value will be destroyed as a direct result of the condemnation because an essential percentage of its business came from customers who worked within a one and one-half block radius of its business, specifically from the Northern Federal Building, Dayton's, The Hamm Building, and St. Paul Companies. Shannon Kelly's claims that the "primary source" of its income is derived from its luncheon business from the customers who work within one and one-half blocks away.

While the record reflects that Shannon Kelly's concedes that the quality of its food and beverages, its service, and its menu prices are factors in the value of the business on a going concern, we cannot con-

clude on this record that the going-concern value is not directly tied to the location. We find it unreasonable to presume (on a motion for summary judgment where inferences are construed against the movant and in favor of the non-moving party) that local lunchtime business customers would willingly travel two, four, six, or eight miles in the limited time available for lunch just to seek out a new restaurant owned by McGovern. Accordingly, we conclude Shannon Kelly's has established at least that a genuine fact issue exists as to whether its going-concern value will be destroyed as a result of the condemnation.

Shannon Kelly's also asserts that it satisfied the second part of the *Schutt* test because his business cannot be relocated as a practical matter or that relocation would result in irreparable harm to the interest. By affidavit, McGovern, Shannon Kelly's president and principal shareholder, stated he "methodically canvassed every location within the one and one half block radius of 6th and Wabasha together with sites outside that radius," and that on the date of the taking, "there was no reasonably suited relocation site." McGovern described that nothing was available across the street from Shannon Kelly's present location, that the Hamm Building was fully occupied and it wanted no additional restaurants, that a new lessee occupied the "only available and appropriate spot" on 7th Place, and that "[n]othing of a size to relocate [the] business was available." McGovern stated that to locate the business beyond the "one and one half block radius would have resulted in irreparable harm" to the business.

 The record shows that McGovern considered purchasing existing businesses in White Bear Lake and Stillwater, and ultimately ended up purchasing an existing restaurant in Willernie. We cannot say, on this record, that such relocation elimi-

nates any fact issue regarding the second *Schutt* element, namely whether Shannon Kelly's business cannot be relocated with no irreparable harm to its business. *See id.* (recognizing "irreparable harm" interpreted as meaning "going-concern value cannot exist apart from the location"). Merely because McGovern could operate a new restaurant in another location somewhere in the state of Minnesota does not indicate that Shannon Kelly's going-concern value was not based primarily on its location. Likewise, the fact that Shannon Kelly's could have transferred its liquor license to another location is not dispositive if no comparable location was available. *See State by Mattson v. Saugen,* 283 Minn. 402, 169 N.W.2d 37, 46 (1969) (concluding going-concern value destroyed where liquor license was tied to particular location and good-faith attempt to transfer license to new location failed).

Taking the facts in the light most favorable to Shannon Kelly's, as we must do, we conclude Shannon Kelly's has established a genuine issue of material fact. *See Offerdahl,* 426 N.W.2d at 427 (reviewing court must view evidence in light most favorable to non-moving party). The district court determined on summary judgment that "there are two operating brew pubs in downtown St. Paul so there is nothing unique about the location at 6th Street and Wabasha for a brew pub." We conclude that whether the location is unique or transferable is a question for the trier of fact.

We find *Dep't of Transp. v. Campbell,* 175 Mich.App. 629, 438 N.W.2d 267 (1988), persuasive on this point. Because the supreme court has cited several Michigan going-concern cases approvingly, we find it appropriate to look to Michigan's caselaw for guidance in the present case. In *Campbell,* the Michigan Court of Appeals determined that "[w]hether a business is

transferable is a factual question and must be determined on a case-by-case basis." *Id.* at 631, 438 N.W.2d at 268. We agree.

In *Campbell,* the court concluded that the district court abused its discretion by refusing to allow the defendant to present evidence of the going-concern value of his business. *Id.* The defendant asserted that his gas-station business was unique because of its location, that the business could not be transferred, that the location provided increased traffic flow, that he was unable to obtain his previous Shell franchise at the new location, and that none of his former customers patronized the new business. *Id.* The court concluded that "[t]he uniqueness of a property must be determined by the trier of fact in each case, and defendant was entitled to present evidence on this issue." *Id. L & L* also recognized that it "will, of course, be for the trier of fact to determine * * * whether the business * * * was transferable to another location, that is to say, the extent to which, if at all, the business was destroyed by the condemnation." *L & L,* 31 Mich.App. at 236, 187 N.W.2d at 472. Because a genuine issue of material fact exists, we conclude the district court erred in granting summary judgment for the HRA on this issue.

■ Finally, the HRA argues that the district court also correctly based its decision on two remaining grounds. First, the district court, citing *Korengold v. City of Minneapolis,* 254 Minn. 358, 95 N.W.2d 112 (Minn.1959), concluded that the lease between Shannon Kelly's and Hoyt terminated upon condemnation and thus that Shannon Kelly's was not entitled to any part of the condemnation proceeds.

The parties' lease provides:

The parties hereto agree that if the leased premise, or any part thereof, shall be taken or appropriated for public use by any public or quasi-public author-

ity during the term of this lease, that this lease shall terminate as of the date of such appropriation and all condemnation proceeds shall be the sole property of [landlord]; * * *.

*Korengold* considered a similar clause and recognized that

[w]ith this type of clause, at least in the absence of a contrary state rule, the tenant has no right which persists beyond the taking and can be entitled to nothing.

*Korengold,* 254 Minn. at 363, 95 N.W.2d at 115–16; *see also In re Matter of Minneapolis Cmty Dev. Agency* 417 N.W.2d 127, 129 (Minn.App.1987) (recognizing when a lease terminates upon condemnation, tenant is "entitled to no compensation" for loss of leasehold interest), *review denied* (Minn. Feb. 24, 1988). But *Korengold* considered the landlord and tenant's compensation with respect to movable fixtures where the tenant had a right to remove the fixtures upon termination:

Since [the tenant] can and is free to remove his equipment and fixtures and the condemnor has not appropriated said fixtures or equipment, the [tenant's] rights are in that respect the same as if the lease in question had terminated naturally, the taking of the premises under the condemnation clause of the lease having caused immediate termination.

*Korengold,* 254 Minn. at 363, 95 N.W.2d at 115–16. The district court examined this provision in two orders. First, in February 2000, the court denied Hoyt's motion for summary judgment, concluding that a fact issue exited as to whether the trade fixtures were included in the language "all condemnation proceeds." Second, in April 2001, the court again recognized that the earlier summary-judgment motion was denied because there "appeared to be a fact

issue regarding the intent of the parties in" including that provision of the lease. But the court determined that the provision, when read in context with another provision that provided that the tenant "has the right to remove its property and trade fixtures, prior to termination of the lease," meant that if Shannon Kelly's did not do so, the landlord would be entitled to the condemnation proceeds for any remaining fixtures. Shannon Kelly's does not challenge this conclusion on appeal. The district court properly came to its conclusion on that issue.

The parties' lease, however, contains no comparable clause relating to the going-concern value of the business, and we question whether upon condemnation and termination of the lease, the landlord could establish a claim for the tenant's loss of going concern value. We do not find *Korengold* persuasive with respect to a tenants' interest in its going-concern value. Here, as we have concluded, a fact issue exists as to whether appellant was "free to remove" (i.e., free to relocate) his going-concern value. This is not a case where the landlord and tenant are asserting competing rights over the going-concern award of damages.[3] Rather, the HRA, which was not a party to the lease between Shannon Kelly's and Hoyt, is asserting that the lease's terms precluded Shannon Kelly's from claiming going-concern damages. We conclude the contract language at issue does not extinguish Shannon Kelly's claim for going concern value.

 Second, the HRA argues that the district court correctly determined that estoppel prevented Shannon Kelly's from asserting loss of going-concern damages. The district court noted that

> it would be inconsistent to claim eligibility for and receive relocation benefits

and also claim [loss of going-concern value]. Having used relocation benefits to establish the Manitou Island Inn, Shannon Kelly's cannot also claim loss of going concern value.

*Campbell* is an example of a situation where recovery of both relocation and going-concern damages are not inconsistent. The gas-station operator incurred expense relocating his gas station, but may be entitled to going-concern value because of the loss of the franchise. We conclude that relocation and relocation benefits (when you have to relocate, you have to relocate) and retaining a claim for loss of going-concern value are not necessarily inconsistent in all situations. Here, McGovern asserts he was unable to relocate Shannon Kelly's. The fact that he may have claimed relocation benefits so that he could move his business fixtures is not inconsistent.

We conclude that a genuine issue of material fact exists as to whether Shannon Kelly's going-concern value will be destroyed as a direct result of the condemnation and whether its business either cannot be relocated as a practical matter, or that relocation would result in irreparable harm to that interest. Accordingly, the district court erred in granting summary judgment for HRA on the issue of going-concern value. We reverse and remand this issue for trial.

## DECISION

The district court did not err in concluding that HRA's $100,000 payment to Shannon Kelly's constituted an advance under Minn.Stat. § 117.155 (2000) and that Minn. Stat. § 117.155 authorizes the return of the advance to the HRA. Return of an overpayment does not constitute "damages" under chapter 117, and, because the

---

3. Hoyt has not participated in this appeal.

legislature did not provide for interest in Minn.Stat. § 117.155, the district court correctly concluded that the HRA was not entitled to interest on the overpayment.

Because Shannon Kelly's has established a genuine issue of material fact with respect to the issue of going-concern damages, the district court erred in granting summary judgment for the HRA on that issue.

**Affirmed in part, reversed in part, and remanded.**