HOUSING AND REDEVELOPMENT AUTHORITY of the CITY of ST. PAUL, Petitioner, Appellant,

v.

Geraldine M. LAMBRECHT, et al., Respondents Below,

Shannon Kelly's, Inc., Respondent.

No. C7–01–1919.

Supreme Court of Minnesota.

June 26, 2003.

Margaret K. Savage, Marc J Manderscheid, Lisa M. Agrimonti, Briggs and Morgan, P.A., St. Paul, MN, for appellant.

Patrick J. Kelly, Sarah J. Sonsalla, Kelly & Fawcett, P.A., St. Paul, MN, for Shannon Kelly's, Inc., respondent.

## OPINION

MEYER, Justice.

This appeal arises out of the dismissal by summary judgment of a lessee's claim of loss of going-concern damages in a condemnation proceeding. The district court granted the Housing and Redevelopment Authority of the City of Saint Paul's (HRA) motion for partial summary judgment against Shannon Kelly's, Inc. (Shannon Kelly's). The court determined that Shannon Kelly's could not establish a claim for loss of going-concern damages as a matter of law; and in any event, the claim was precluded by certain lease language and the acceptance of relocation benefits by Shannon Kelly's. The court of appeals reversed on all three grounds, finding that issues of genuine fact remain as to whether a claim for loss of going concern existed and that neither the lease language nor the acceptance of relocation benefits precluded recovery. We granted review only on the limited issue of whether the district court erred in holding that Shannon Kelly's was not entitled to recover for loss of going-concern value.

We reverse the court of appeals on two grounds. We conclude that the condemnation clause in Shannon Kelly's lease precluded any recovery for loss of going-concern damages because the lease language effectively ended Shannon Kelly's interest in the property upon condemnation. In addition, we conclude that Shannon Kelly's did not establish its claim as a matter of law and the district court properly granted summary judgment to HRA. We decline to address whether Shannon Kelly's claim is also precluded by the acceptance of relocation benefits.

On July 30, 1997, HRA adopted a resolution authorizing the condemnation of Block 39 as part of a redevelopment plan in downtown St. Paul. Block 39 is bounded by St. Peter, Fifth, Wabasha, and Sixth Streets and includes 395 Wabasha, which housed Shannon Kelly's. Shannon Kelly's was a restaurant/brewery owned by James H. McGovern and had occupied its downtown location for over seven years. McGovern also owned twenty-five percent of W.O.A.M., Inc., the corporation that owned 395 Wabasha at the time Block 39 was condemned. Upon adopting the resolu-

tion, HRA sent letters to all of the businesses affected, including W.O.A.M. and Shannon Kelly's, notifying them of the pending condemnation and offering relocation assistance.

On October 9, 1997, HRA filed its petition in condemnation in Ramsey County District Court. On October 20, 1997, W.O.A.M., with knowledge of the pending condemnation, sold 395 Wabasha to Hoyt Development Company (Hoyt). That same day, Shannon Kelly's entered into a five-year lease agreement with Hoyt. The lease contained a "condemnation clause" that allegedly terminated the lease upon condemnation and a clause that allowed the lessee the right to remove personal property and trade fixtures upon termination of the lease.

On December 31, 1997, the district court granted HRA's petition for condemnation, appointed three commissioners to value the property, authorized payment, and provided for the transfer of title for all properties located on Block 39. As a result of this order, on February 5, 1998, HRA advanced Shannon Kelly's $100,000 in relocation benefits and deposited with the district court a sum for the value of fixtures and land.[1] McGovern removed from Shannon Kelly's his brewery equipment, a center island bar, a smoke eater, kitchen equipment, office equipment, grain and hops related to the brewery, and the stained glass from a ceiling-mounted light fixture.

On February 10, 1998, McGovern signed a purchase agreement for the Shore Club Bar & Restaurant, located at 301 Stillwater Road in Willernie, Minnesota. After obtaining a liquor license from the City of Willernie, McGovern began operating the restaurant under a new name, Manitou Island Inn (the Inn). McGovern transferred some of Shannon Kelly's assets to the Inn, such as a smoke eater, a center island bar, and stained glass. Because the Inn was not a brewery, McGovern was unable to utilize Shannon Kelly's brewing equipment and it remained in storage. A number of employees from Shannon Kelly's were hired to work at the Inn.

In July 1999, three court-appointed commissioners determined that the condemnation award for 395 Wabasha should be $700,000 for the value of the real estate, $263,000 for the value of the trade fixtures, and $77,000 for Shannon Kelly's going-concern value, for a total award of $1,040,000. In their award, the commissioners did not specify how this amount was to be divided between Hoyt (the lessor) and Shannon Kelly's (the lessee). All parties subsequently appealed to the district court. Shannon Kelly's appealed on the basis that the damages awarded by the commissioners did not constitute just compensation. Hoyt appealed on the grounds that the damages were inadequate and that the commissioners failed to award the entire compensation award to it. HRA cross-appealed on the basis that the award was contrary to the evidence and that it improperly included a claim for loss of going concern when no such loss was established at the commissioners' hearing.

In November 2000, HRA moved for partial summary judgment on Shannon Kelly's loss of going-concern claim. In support of its motion, HRA provided an affidavit from Robert Kessler, the Director of the Office of License, Inspections

---

1. On a separate summary judgment motion, the court granted a dismissal of Shannon Kelly's claim for recovery on the fixtures, concluding that the lease between Hoyt and Shannon Kelly's clearly and unequivocally terminated Shannon Kelly's interest in the property, and awarding all condemnation proceeds for fixtures to Hoyt. Shannon Kelly's did not appeal from the court's dismissal of the claim.

and Environmental Protection for St. Paul, the office in charge of executing liquor licenses. In his affidavit, Kessler stated there was no reason that McGovern could not have obtained a liquor license to operate a bar in a new location in St. Paul after 395 Wabasha was condemned. HRA also provided excerpts from McGovern's depositions and multiple other documents to support its motion.

In its response, Shannon Kelly's provided an affidavit of McGovern, in which he described his attempts to relocate Shannon Kelly's in downtown St. Paul, and that his clientele came from within a one block to one and one-half block radius from 395 Wabasha. He noted in his affidavit that he was not able to relocate Shannon Kelly's and that any attempt to relocate Shannon Kelly's further than one block to one and one-half blocks would cause irreparable harm to his business. McGovern claimed the condemnation resulted in the destruction of the going concern of his business because he was not able to relocate his business in downtown St. Paul. Shannon Kelly's argued that the going-concern value would be developed by experts at trial. No other documentation to support these contentions was provided at the summary judgment hearing.

The district court granted HRA's motion for partial summary judgment on three grounds. First, it concluded that Shannon Kelly's could not assert a valid claim for loss of going concern because it could not establish either prong of the test set forth in *City of Minneapolis v. Schutt,* 256 N.W.2d 260 (Minn.1977). The district court concluded that Shannon Kelly's could not meet the first prong because its going-concern value did not come primarily from its location, it did not enjoy a monopoly, its customers were not captive, it was not unique, and there was no indication it was precluded from relocating because of the

unavailability of liquor licenses in St. Paul. The district court noted that two other breweries existed in downtown St. Paul and that many other businesses had converted old bars into new establishments with the creation of the Xcel Energy Center. The district court also concluded that Shannon Kelly's could not meet the second prong of *Schutt* because it could relocate elsewhere and, in fact, McGovern had opened a new restaurant elsewhere in the state. Second, the district court noted that even if Shannon Kelly's could have established a valid loss of going-concern claim, the claim was precluded because of the condemnation language in its lease. Finally, the district court also noted that Shannon Kelly's acceptance of payments for relocation benefits precluded it from asserting a loss of going-concern claim.

Shannon Kelly's appealed. The court of appeals reversed on all three grounds. *Housing & Redevelopment Auth. of the City of St. Paul v. Lambrecht,* 645 N.W.2d 157, 166–68 (Minn.App.2002). The court of appeals began by noting that genuine questions of material fact remained as to whether Shannon Kelly's business had satisfied the requirements under *Schutt. Id.* at 166. The court of appeals concluded that whether the location is unique or transferable (the second *Schutt* factor) is a question of fact to be resolved by the jury rather than a question of law to be decided by the district court. *Id.* Therefore, the district court had improperly engaged in fact-finding in denying Shannon Kelly's claim. The court further determined that neither the lease language nor the acceptance of relocation benefits precluded Shannon Kelly's claim for loss of going concern. *Id.* at 167–68. HRA appealed.

■ A party seeking compensation in a condemnation action must prove that (a) they had an interest in the condemned property; (b) the interest was taken by

the government in the course of the condemnation; and (c) the interest taken is compensable. *See State v. Saugen,* 283 Minn. 402, 169 N.W.2d 37, 39 (1969). Because the parties do not dispute the government took Block 39 in the course of a condemnation, the two issues to be decided are whether Shannon Kelly's had an interest in the property at the time of condemnation and whether that interest is compensable.

■ We begin by addressing whether Shannon Kelly's had an interest in the condemned property at the time of condemnation. Because this issue requires interpretation of contractual provisions, we review this issue de novo. *Progressive Specialty Ins. Co. v. Widness ex rel. Widness,* 635 N.W.2d 516, 518 (Minn.2001).

■ Generally, upon condemnation of property by a government body, a tenant is entitled to share in the award of the property to the extent of the valuation of such leasehold. *See United States v. Petty Motor Co.,* 327 U.S. 372, 378–79, 66 S.Ct. 596, 90 L.Ed. 729 (1946); Jay M. Zitter, *Validity, Construction, and Effect of Statute or Lease Provision Expressly Governing Rights and Compensation of Lessee upon Condemnation of Leased Property,* 22 ALR5th 327, 350 (1994). A lease agreement containing what is commonly referred to as a "condemnation clause" may further determine the rights of the tenant in the event of a condemnation. Zitter, 22 ALR5th at 350 (observing that a condemnation clause may provide that the lease ends automatically upon condemnation, or that the lease could be cancelled at the option of a party, or that some or all of the tenant's rights are assigned to the landlord). When the lease contains a clause that "automatically terminates [the lease] upon condemnation of the land, the lessee is entitled to no compensation for the loss of his leasehold interest, since he agreed in

advance to such a termination." *Naegele Outdoor Adver. Co. of Minnesota, Inc. v. Village of Minnetonka,* 281 Minn. 492, 503, 162 N.W.2d 206, 214 (1968).

Shannon Kelly's lease provided that:

15. *Condemnation.* The parties hereto agree that if the leased premises, or any part thereof, shall be taken or appropriated for public use by any public or quasi-public authority during the term of this lease, that *this lease shall terminate. as of the date of such appropriation and all condemnation proceeds shall be the sole property of Lessor;* it is further agreed that if this lease is terminated because of a [sic] such taking of the property, that the monthly rental for the month in which the condemnation taking occurs shall be prorated between the parties hereto.

(Emphasis added.) We examined a similar lease provision in *Korengold v. City of Minneapolis,* 254 Minn. 358, 95 N.W.2d 112 (1959). *Korengold* involved a condemnation proceeding by the City of Minneapolis for a public library site in downtown Minneapolis. 254 Minn. at 359, 95 N.W.2d at 113. A dental lab was a tenant in one of the condemned buildings. *Id.* The owner of the dental lab had signed a lease containing the following provision:

The tenant further agrees that if the demised premises, or any part thereof, or any part of the improvements of which they form a part, shall be taken for any street or other public use, or shall during the continuance of this lease be destroyed by the action of the public authorities, then this lease and the term demised shall thereupon terminate.

*Id.* at 359–60, 95 N.W.2d at 114. We denied the tenant damages for equipment and fixture removal and relocation because the condemnation clause left the tenant "without a compensable interest in the

condemned premises." *Id.* at 362, 95 N.W.2d at 115. In denying the claim, we adopted the general rule that if a tenant agrees to a lease clause that automatically terminates a lease at the time of condemnation, "'the tenant has no right which persists beyond the taking and can be entitled to nothing.'" *Id.* at 363, 95 N.W.2d at 115 (*quoting Petty Motor Co.,* 327 U.S. at 376).

The condemnation clause in Shannon Kelly's lease is substantially the same as the corresponding lease term in *Korengold.* Shannon Kelly's attempts to distinguish *Korengold* from the instant case because *Korengold* involved a lessee's claim for fixtures and the instant claim is one for loss of going-concern value. Shannon Kelly's argument is not persuasive. Whether the claim is for fixtures, equipment, or loss of going concern, the condemnation clause unequivocally terminates Shannon Kelly's rights in the property at the time of condemnation. The condemnation clause in Shannon Kelly's lease was designed to describe the rights of each party upon the occurrence of certain events. Had Shannon Kelly's intended to retain some rights in the property after condemnation, it could have retained those rights through the lease agreement. We conclude that Shannon Kelly's contracted away all its rights in the property, including any claim for loss of going concern. We hold that the condemnation provision in the lease agreement terminated Shannon Kelly's interest in the property at the time of condemnation and therefore it did not have an interest in the condemned property.

We next address whether the district court properly granted summary judgment to HRA. The court of appeals reversed the district court's grant of summary judg-

ment, finding that the evidence was sufficient to withstand a motion for summary judgment and concluding that the *Schutt* factors were questions of fact to be resolved by the jury rather than questions of law to be decided by the district court.[2]

■■■ On appeal from an order for summary judgment, we examine whether there are any genuine issues of material fact, whether either party is entitled to judgment as a matter of law, and whether the lower court erred in its application of the law. *See Pergament v. Loring Properties, Ltd.,* 599 N.W.2d 146, 149 (Minn. 1999); *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995). Summary judgment is appropriate when the record shows a complete lack of proof on any essential element of the plaintiff's claim. *Lubbers,* 539 N.W.2d at 401 (holding that to establish a genuine issue of material fact the nonmoving party cannot merely make conclusory unverified statements or explain what evidence might be established at trial).

■■■ Under both the Minnesota and federal constitutions, private property cannot be taken without just compensation, but there is no requirement that compensation be paid for every interest taken. *See Kimball Laundry Co. v. United States,* 338 U.S. 1, 5, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949) (finding that not all takings are compensable under the Fifth Amendment); *Schutt,* 256 N.W.2d at 265 (holding that the loss of twenty percent of a business through a permanent taking did not result in the loss of a compensable interest). In general, courts have held that a lessee is not entitled to compensation for a claim alleging loss of going concern because such a claim is not a taking under the constitu-

---

**2.** Having disposed of Shannon Kelly's claim under the terms of the lease, it is not necessary for us to reach this issue. Nevertheless, we believe the court of appeals incorrectly decided the question and we write to provide clarification on this important point of law.

tion, the going-concern value is too intangible to constitute property under the constitution, or the amount of damages resulting from the loss of this interest is too speculative. *Schutt,* 256 N.W.2d at 261–62.

■ In Minnesota, the business owner must satisfy both prongs of the *Schutt* test to obtain compensation for loss of going concern. Those two prongs are that (1) "his going-concern value will in fact be destroyed as a direct result of the condemnation" and (2) "his business either cannot be relocated as a practical matter, or that relocation would result in irreparable harm to the interest." *Id.* at 265. As long as the business can potentially be relocated, courts have held that the government has not taken any interest compensable under the constitution, even though the owner can show that the goodwill of the business suffered damage or that there are no suitable places to which the business could be relocated. *See Kimball Laundry,* 338 U.S. at 11–12, 69 S.Ct. 1434; 26 Am.Jur.2d, *Eminent Domain* § 335 at 749 (1996). Under circumstances where the business can potentially be relocated, the condemnation has only taken the physical property and has not prevented the business owner from actually moving his business. *Kimball Laundry,* 338 U.S. at 11–12, 69 S.Ct. 1434 (stating that while the business owner may suffer a loss because he has difficulty finding another suitable location, this type of alleged loss is "so speculative that proof of it may justifiably be excluded" by the district court). *But see Saugen,* 283 Minn. at 410, 169 N.W.2d at 42–43 (awarding loss of going-concern damages because the business owner's attempts to obtain a new liquor license were refused); *City of Detroit v. Michael's Prescriptions,* 143 Mich.App. 808, 373 N.W.2d 219, 225 (1985) (finding loss of going concern where entire segments of a residential and business community eliminated drug store's

customer base); *City of Lansing v. Wery,* 68 Mich.App. 158, 242 N.W.2d 51, 52–53 (1976) (finding loss of going concern when relocation attempts were prevented by government action).

We consider the proper role of the district court in deciding questions that arise under *Schutt.* HRA claims the court should apply the *Schutt* factors to decide as a matter of law whether there has been a taking before submitting any question of damages to the jury. On the other hand, Shannon Kelly's asserts the court of appeals properly determined that the *Schutt* questions are decided by the jury.

■ We have long held that the power to determine whether there has been a taking is vested in the court and is not within the purview of the jury. *State v. Prow's Motel, Inc.,* 285 Minn. 1, 4–5, 171 N.W.2d 83, 85–86 (1969) (holding "that the power to determine whether some property right of a landowner has been taken or damaged in a constitutional sense [is] vested in the trial court"); *see* 27 Am.Jur.2d, *Eminent Domain* § 617 at 163–64 (1996) (stating that in general the district court "has the duty to determine such issues as the condemnor's legal authority to take and the limits thereon, the purpose of the taking, the necessity and expediency of the taking, and questions of title"). Once the trial court determines the threshold question of whether an interest has been taken, then the parties present evidence of the loss of that interest to the jury for a determination of the *amount* of compensation due. *See Prow's Motel,* 285 Minn. at 6–7, 171 N.W.2d at 86; 27 Am.Jur.2d, *Eminent Domain* § 618 at 164. We conclude that the court, not the jury, has the power to apply the *Schutt* factors to determine whether a compensable interest exists. The court of appeals erred when it concluded that "whether the location is unique or transferable is a question for the trier

of fact." *Lambrecht*, 645 N.W.2d at 166. We reverse the court of appeals and hold that the district court must apply the *Schutt* two-prong test to any claim for loss of going concern as a matter of law before submitting damages to the jury.

We now consider whether the district court correctly applied the *Schutt* two-prong test in denying Shannon Kelly's claim for loss of going-concern value. At summary judgment, Shannon Kelly's alleged its business was destroyed as a direct result of the condemnation, that it could not be relocated without causing irreparable harm to its business, and that it did not succeed in relocating as a practical matter. In support of these contentions, McGovern alleged that his business was expressly tied to 395 Wabasha and therefore was taken as a direct result of the condemnation action. McGovern described his many attempts to relocate Shannon Kelly's throughout St. Paul and his inability to find a suitable relocation site.[3] However, the district court found that the inability to relocate was not due to the fact that the property was unique; that the business was directly tied to the location; that no liquor licenses were available in the city of St. Paul; or because government action had prevented the relocation. Rather, as he stated numerous times in his deposition, McGovern's efforts to relocate Shannon Kelly's failed because he was unwilling or unable to pay the price

required to secure an alternate downtown location. Other than McGovern's unsupported affidavit, Shannon Kelly's has not provided any evidence showing that it was unable to relocate. *See Kimball Laundry*, 338 U.S. at 11, 69 S.Ct. 1434 (finding that when the ability to relocate is prevented by the owner's "good fortune or lack of it in finding premises suitable for the transference of going-concern value," then as a matter of law the government has not taken the going-concern value). We conclude that Shannon Kelly's failed to establish that its business could not be relocated, and we affirm the district court's grant of summary judgment for HRA.

Reversed and remanded.

HANSON, J., took no part in the consideration or decision of this case.

Concurring in part, dissenting in part, GILBERT, J.

GILBERT, Justice (concurring in part and dissenting in part).

While I generally concur with the result reached by the majority based on this record, we should end our discussion with the termination of condemnation rights in the lease. I disagree with the majority's characterization of the proper role of the district court in always deciding questions that arise under *City of Minneapolis v. Schutt*, 256 N.W.2d 260 (Minn.1977). The resolution of the first issue renders the remaining issue moot and all that follows is dicta. We should save any discussion on

---

**3.** Shannon Kelly's asserts that it "was not given the opportunity to defend the summary judgment motion by presenting additional affidavits and testimony demonstrating the importance of Shannon Kelly's location through statistical studies of its customer base, the financial unfeasibility of relocation, and the fair market value of its business." The record establishes that discovery was completed when HRA moved for summary judgment and Shannon Kelly's never sought additional time from the district court in which to respond to the summary judgment motion. Having failed to raise this issue before the district court, Shannon Kelly's has waived its opportunity to complain.

the *Schutt* test for another day when it is properly presented for decision.

In this case, we are reviewing a summary judgment granted by the district court as a matter of law on undisputed facts. The district court based its decision on the premise there was no genuine issue of material facts presented and then ruled as a matter of law that the *Schutt* factors had not been met. Furthermore, *Schutt* also involved undisputed facts on cross motions for summary judgment. 256 N.W.2d at 261. It is unnecessary and improper to conclude that therefore in all other cases alleging loss of going concern it is for the court and not the jury to apply the *Schutt* factors in all circumstances. There is no authority cited by the majority supporting this proposition of law. The majority also engages in improper factual finding. We should simply reverse the court of appeals and affirm the district court based on the undisputed facts presented and hold the court did not err as a matter of law under the facts of this case.

PAGE, Justice (concurring specially).

I concur in the result. I agree with Justice Gilbert, however, that upon concluding that Shannon Kelly's did not have an interest in the condemned property, nothing more needed to be or should have been said.

ANDERSON, Paul H., Justice (concurring specially).

I join in the special concurrence of Justice Page.