Dean P. VLAHOS, et al., Appellants,

v.

R&I CONSTRUCTION OF BLOOM-INGTON, INC., f/k/a Robert Waade & Associates, Inc., et al., Respondents,

John Doe, et al., Defendants, and R & I Construction Of Bloomington, Inc., f/k/a Robert Waade & Associates, Inc., et al., third-party plaintiffs, Respondents,

v.

Quality Insulation, Inc., third-party defendant, Respondent,

Intex Insulating Co., Inc., Third-Party Defendant,

Kleve Heating & Air Conditioning, Inc., third-party defendant, Respondent,

Tappe Construction Co., third-party defendant, Respondent,

Donnelly Brothers Construction Company, Inc., third-party defendant, Respondent,

Collins Electrical Construction Co., third-party defendant, Respondent,

Weather Shield Mfg., Inc., Third-Party Defendant.

No. C7–02–1428.

Supreme Court of Minnesota.

April 1, 2004.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for Appellant.

Anton van der Merwe, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for Respondents R & I Construction of Bloomington, Inc. F/k/a Robert Waade & Associates, Inc., and Robert Waade.

David S. Holman, Esq., Burnsville, MN; and Timothy W. Waldeck, Esq., Peter M. Waldeck, Esq., Waldeck & Lind, P.A., Minneapolis, MN, for Respondent Donnelly Brothers Construction Co.

John E. Varpness, Esq., Gislason, Martin & Varpness, P.A., Minneapolis, MN, for Respondents Kleve Heating & Air Conditioning, Inc.

Michael D. Carr, Esq., Fitch, Johnson, Larson, Walsh & Held, P.A., Minneapolis, MN; and Bruce A. Boeder, Esq., Lambert & Boeder, Wayzata, MN; and Michael D. Barrett, Esq., Cousineau, McGuire & Anderson, Minneapolis, MN, for Respondent Tappe Construction Co.

Byron Peterson, Esq., Tomsche, Sonnesyn & Tomsche, P.A., Golden Valley, MN; and Michael R. Moline, Esq., Conley & Borgeson, St. Paul, MN, for Respondent Quality Insulation, Inc.

Jocelyn L. Knoll, Esq., Fabyanske, Westra & Hart, P.A., Minneapolis, MN, for Respondent Collins Electrical Construction Company.

David D. Hammargren, Roberta A. Yard, Hammargren & Meyer, P.A., Edina, MN, for Amicus Curiae The Minnesota Homeowners' Alliance.

## OPINION

ANDERSON, RUSSELL A., Justice.

In this case, we consider when the statute of limitations begins to run on a home owner's claim that the builder breached the 10–year statutory new home warranty against "major construction defects" provided by Minn.Stat. § 327A.02, subd. 1(c) (1990).[1] We hold that the applicable statute of limitations, Minn.Stat. § 541.051,

---

1. Throughout this opinion, the terms builder, homeowner and home will be used interchangeably with the terms vendor, vendee/purchaser and dwelling/residence, respectively.

subd. 4 (2002), begins to run when the homeowner discovers, or should have discovered, the builder's refusal or inability to ensure the home is free from major construction defects. We also consider whether the definition of "major construction defect" in the statutory new home warranty extends to actual damage to load-bearing portions of the dwelling occurring after the completion of construction. We hold that it does, subject to the specifically enumerated exclusions and exceptions provided in Minn.Stat. § 327A.03 (2002). Concluding that the homeowner's claim was barred by the statute of limitations and failed to allege major construction defects, the district court granted summary judgment to the builder and the court of appeals affirmed. We reverse and remand.

In 1999, Dean and Michelle Vlahos (Vlahoses) purchased a home from Roger and Carol Rovick (Rovicks), which had been constructed in 1990 by respondent R&I Construction of Bloomington, Inc., f/k/a Robert Waade Associates, Inc. (R&I). When the Vlahoses subsequently discovered water damage to the home and R&I refused to repair any of the damage, the Vlahoses commenced suit against R&I.

R&I entered into a contract with the Rovicks in June 1990 to construct a luxury home on Lake Minnetonka. In 1991, the home was substantially completed and a certificate of occupancy was issued. The Rovicks moved in immediately and occupied the home continuously until 1999. Between 1992 and 1999, the Rovicks experienced repeated water and moisture-related problems with the home.

In August 1999, the Vlahoses entered into a purchase agreement with the Rovicks for the purchase of the home. The purchase agreement contained a "Complete House Inspection" contingency entitling the Vlahoses to inspect the property and cancel the transaction if the inspection revealed unsatisfactory conditions. The Rovicks provided the Vlahoses with a "Seller's Property Disclosure Statement" which disclosed roof, wall and ceiling damage caused by water and identified areas of water seepage, leakage, corrosion, and mold. The Rovicks also informed potential buyers that "some windows may need replacement."

Prior to closing, the Vlahoses hired a building inspector to inspect the home. The inspector prepared a report which detailed extensive water damage to the home, including areas of water seepage, leakage, corrosion, and mold. After negotiating a $20,000 credit to repair and replace some windows, the Vlahoses closed the transaction in January 2000, paying $5,175,000 for the home. During an extensive remodeling project undertaken in April 2000, the Vlahoses discovered significant water damage to the home. The Vlahoses claim that much of the water damage was discovered behind the walls and involved "decay of interior floor trusses, ceiling trusses and other load-bearing supports throughout the [r]esidence." The Vlahoses deny any awareness of the extent of the damage to the home prior to the remodeling. The Rovicks claim that the problems of which they were aware regarding water penetration were isolated, not significant, and had been fixed prior to the sale to the Vlahoses.

Beginning in May 2000, the Vlahoses provided both oral and written notice of the problems and their claim to R&I and afforded R&I the opportunity to repair and/or pay for the repair of the damage to the home. Thereafter, R&I and its insurers inspected the home as the damage was being discovered. R&I refused, however, to repair and/or pay for any of the damage. The Vlahoses subsequently spent $3,800,000 to remodel the home, of which

$1,118,000 was attributed to the repair of the water damage.

The Vlahoses initiated this lawsuit against R&I in April 2001, asserting claims for breach of the residential 10–year statutory warranty provided by Minn.Stat. § 327A.02, subd. 1(c), negligence, and false and deceptive trade practices under Minn. Stat. § 325D.44 (2002).[2] R&I denied liability to the Vlahoses and asserted third-party claims seeking contribution and indemnity against numerous subcontractors and suppliers who contributed labor and/or materials to the home's construction (third-party defendants).

R&I and the Vlahoses filed cross motions for summary judgment. Both parties submitted numerous expert affidavits describing the water damage to the home. The district court granted summary judgment in favor of R&I and the third-party defendants, concluding that the 2–year statute of limitations for claims arising from improvements to real property, Minn. Stat. § 541.051, subd. 1(a) (2002), barred the suit because the Rovicks knew or should have known of the water damage many years prior to the commencement of Vlahoses' action and thus discovery of the injury to the real property occurred more than two years prior to the Vlahoses' suit. The district court further concluded that the 10–year statutory warranty against "major construction defects" under Minn. Stat. § 327A.02 failed as a matter of law because the construction defects leading to the water penetration and damage were not "major construction defects." In

reaching this conclusion, the district court relied on an unpublished opinion of the court of appeals, *Fachman v. Kuechle*, 1992 WL 166793 (Minn.App. July 21, 1992), *rev. denied* (Minn. Sept. 30, 1992). In *Fachman*, the court of appeals held that damage to a load-bearing portion of a home occurring after the completion of construction is not included in the definition of a major construction defect.[3] *Id.* at *3.

The Vlahoses appealed the grant of summary judgment to R&I. The court of appeals affirmed the district court's decision. *Vlahos v. R&I Constr. of Bloomington*, 658 N.W.2d 917, 922 (Minn.App.2003). The court of appeals concluded that the 2–year statute of limitations provided by Minn. Stat. § 541.051, subd. 1, commenced at the time the defect in construction was known or should have been known to the Rovicks and that the statute required that the Rovicks' notice of the defect be imputed to the Vlahoses. *Vlahos*, 658 N.W.2d at 921. The court further concluded that the alleged defects did not constitute "major construction defects" because the defects arose after water penetration damaged the original construction. *Id.* at 922. Given this holding, the court did not reach the issue of when notice of any such breach occurred for purposes of the statute of limitations under Minn.Stat. § 541.051. *Vlahos*, 658 N.W.2d at 922.

## I.

■ Summary judgment is proper when there is no genuine issue as to any materi-

---

2. The Vlahoses also made a claim against the Rovicks which was arbitrated under the purchase agreement.

3. This reliance was misplaced, both as a matter of law and as a matter of practice. While we detail our disagreement with this rule announced in *Fachman* in the following pages, we pause here to stress that unpublished opinions of the court of appeals are not

precedential. *See* Minn.Stat. § 480A.08, subd 3(c) (2002); *Powell v. Anderson*, 660 N.W.2d 107, 123 (Minn.2003). The danger of miscitation is great because unpublished decisions rarely contain a full recitation of the facts. *See Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 801 (Minn.App.1993). Unpublished decisions should not be cited by the district courts as binding precedent.

al fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03; *Denelsbeck v. Wells Fargo & Co.,* 666 N.W.2d 339, 345 (Minn.2003). On appeal from a district court's order granting summary judgment, we review the record to determine whether there are any genuine issues of material fact and whether the court properly applied the law. *Patterson v. Wu Family Corp.,* 608 N.W.2d 863, 866 (Minn.2000). In doing so, we view the evidence in a light most favorable to the nonmoving party. *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 571 (Minn.1994).

We must first determine whether the Vlahoses' claim is barred by the statute of limitations. The statute of limitations found in Minn.Stat. § 541.051, subd. 4, requires home-warranty actions based on Minn.Stat. § 327A.02 to be "brought within two years of the discovery of the breach" of warranty. We note at the outset that both the district court and court of appeals erroneously relied on subdivision 1 of Minn.Stat. § 541.051 instead of subdivision 4. *See Vlahos,* 658 N.W.2d at 920–21. Likewise, in *Hyland Hill North Condo. Ass'n v. Hyland Hill Co.,* 549 N.W.2d 617, 620–22 (Minn.1996), we failed to distinguish between warranties arising under Minn.Stat. § 515A.4–111 (2002), the Uniform Condominium Act (UCA), and the statutory new home warranty arising under Minn.Stat. § 327A.02, and applied Minn.Stat. § 541.051, subd. 1, to both warranty claims. In hindsight, we should have distinguished the two warranties and applied Minn.Stat. § 541.051, subd. 4, to the Minn.Stat. § 327A.02 statutory new

home warranty. Therefore, to the extent *Hyland Hill* is inconsistent with our holding today, it is overruled. We note that in *Koes v. Advanced Design, Inc.,* 636 N.W.2d 352 (Minn.App.), *rev. denied* (Minn. Feb. 19, 2002), the court of appeals accurately explained the interplay between Minn.Stat. §§ 327A.02 and 541.051:

> [B]ecause warranty claims under Minn. Stat. § 327A.02 are specifically exempted from the statutes of limitation and repose set forth in Minn.Stat. § 541.051, subd. 1(a), the only statutory limitation applying, by its terms, to a § 327A.02 claim is found in § 541.051, subd. 4. The limitation found in Minn.Stat. § 541.051, subd. 4, requires home-warranty actions based on Minn.Stat. § 327A.02 to be "brought within two years of the discovery of the breach" of warranty.

*Koes,* 636 N.W.2d at 357–58. While Minn. Stat. § 541.051, subd. 1(b) (2002), provides that "a cause of action accrues upon discovery of the *injury,*" subdivision 4 of the statute provides that a cause of action "based on breach of the statutory warranties set forth in section 327A.02" must be brought "within two years of the discovery of the *breach.*" *Compare* Minn.Stat. § 541.051, subd. 1(b) *with* Minn.Stat. § 541.051, subd. 4 (emphasis added).[4]

The Vlahoses contend that the statutory warranty claim did not commence until they discovered, or with reasonable diligence should have discovered, the alleged breach of the warranty. This contention represents an erroneous interpretation of the statute. The statute does *not* state that a cause of action accrues upon discovery of the breach *by the vendee currently*

4. Third-party defendant/respondent Collins Electrical Construction Co. contends that the phrase "discovery of the injury" contained in Minn.Stat. § 541.051, subd. 1, is synonymous with the phrase "discovery of the breach" contained in § 541.051, subd. 4. We disagree. Collins' contention violates the statutory pre-

sumption that the legislature intends an entire statute to be effective and certain. Minn.Stat. § 645.17(2) (2002); *State v. Loge,* 608 N.W.2d 152, 158 (Minn.2000). The legislature would not have employed different terms in different subdivisions of the statute if it had intended those subdivisions to have the same effect.

*in possession of the home.* Minnesota Statutes section 327A.01, subd. 6 (2002), defines "vendee" as "any purchaser of a dwelling and includes the initial vendee and any subsequent purchasers." Because the definition of "vendee" contained in Minn.Stat. § 327A.01, subd. 6, includes both the initial homeowner and subsequent purchasers, any discovery of the breach or defect by *any* vendee triggers the 2–year statute of limitation contained in Minn. Stat. § 541.051, subd. 4.

 A warranty of future performance provides a guarantee that the product will perform in the future as promised. *Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 6 (Minn.1992), *overruled on other grounds by Ly v. Nystrom*, 615 N.W.2d 302, 314 n. 25 (Minn. 2000). The statutory new home warranty at issue in this case functions much like the express warranty of future performance we addressed in *WatPro.* In that case, we addressed the question of whether a warranty promising to maintain a roof in a watertight condition for a period of 10 years was a warranty that explicitly extended to future performance under Minn. Stat. § 336.2–725 (1990). *WatPro,* 491 N.W.2d at 6. We held that the guarantees "extended to the future performance of the goods, expressly warranting that the roofs would remain watertight for ten years." *Id.* Here, the statutory home warranty guarantees that "during the ten-year period from and after the warranty date, the dwelling shall be free from major construction defects." Minn.Stat. § 327A.02, subd. 1(c). Like the warranty in *WatPro,* the statutory new home warranty explicitly extends to future performance.

 R&I essentially contends that the Vlahoses' claim is time-barred regardless of whether the statutory home warranty extends to future performance because the Vlahoses commenced this action more than 2 years after the breach was or should have been discovered. R&I contends that the Rovicks knew or should have known of the breach in 1992 when they first became aware of the existence of moisture-related problems. In *WatPro,* we concluded that where there is a warranty that explicitly extends to future performance,

> the cause of action accrues and the statute of limitations begins to run when the plaintiff discovers or should have discovered the defendant's refusal or inability to maintain the goods as warranted in the contract.

*WatPro,* 491 N.W.2d at 6 (quotation marks omitted). In *WatPro,* we held the breach occurred when the distributor advised the building owner that the manufacturer's agent was unable or unwilling to honor its guaranty. *Id.* at 7.[5] We hold today that the statute of limitations, Minn.Stat. § 541.051, subd. 4 (2002), applicable to the statutory new home warranty provided by Minn.Stat. § 327A.02, subd. 1(c) (1990), begins to run when the homeowner discovers, or should have discovered, the builder's refusal or inability to ensure the home is free from major construction defects.

According to the Vlahoses, the Rovicks never requested in writing that R&I repair any defect to the load-bearing portions of the home, and the Vlahoses were the first to make such a demand. Therefore, according to the Vlahoses, R&I breached the warranty when it refused the Vlahoses' demand in May 2000 to remedy or attempt to remedy the alleged major construction defects. R&I contends that the record shows that from 1992 until the Rovicks sold the home to the Vlahoses in 2000, they

---

**5.** We recognize that under the present statutory scheme, it is entirely conceivable that the statute of limitations could run before the expiration of the applicable warranty period.

experienced consistent water intrusion and had to repair various water damaged areas of the home. R&I further contends that despite experiencing repeated water-related damage, the Rovicks did not pursue any legal action against R&I. As set forth above, however, the failure to pursue legal action does not trigger the running of the statute of limitations. Based on the information presented to the district court, the question of when either the Rovicks or the Vlahoses discovered or should have discovered R&I's refusal or inability to ensure the home was free from major construction defects was a factual question, inappropriate for resolution on summary judgment. *Leamington Co. v. Nonprofits' Ins. Ass'n,* 615 N.W.2d 349, 355 n. 4 (Minn.2000); *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997).

## II.

Having concluded that genuine issues of material fact exist with regard to whether the Vlahoses' claim is barred by operation of the statute of limitations, we now turn to the definition of "major construction defect." The Vlahoses contend that the 10–year statutory new home warranty provided by Minn.Stat. § 327A.02, subd. 1(c), covers their claimed water damage loss because persistent water intrusion has, over 8 years, found its way to some interior wood components. The Vlahoses argue that because water infiltrated the home and that water infiltration eventually damaged some of the load-bearing portions of the home, the 10–year warranty applies. The Vlahoses point to damage to the walls, ceiling, and floor trusses as evidence of "major construction defects." R&I contends that the plain language of Minn.Stat. § 327A.02, subd. 1(c), provides that the alleged construction defect must be created during and be present upon completion of construction.

Statutory construction is a question of law subject to de novo review. *Anderson–Johanningmeier v. Mid–Minnesota Women's Ctr., Inc.,* 637 N.W.2d 270, 273 (Minn.2002). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2002). When the language of a statute is plain and unambiguous, that plain language must be followed. *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 210 (Minn. 2001). A statute is only ambiguous when its language is subject to more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). Under the basic canons of statutory construction, we construe words and phrases according to rules of grammar and according to their most natural and obvious usage unless it would be inconsistent with the manifest intent of the legislature. *See* Minn.Stat. § 645.08(1) (2002); *Amaral,* 598 N.W.2d at 384. "Every law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16. Whenever possible, no word, phrase, or sentence should be deemed superfluous, void, or insignificant. *Amaral,* 598 N.W.2d at 384.

Enacted in 1977, Minnesota Statutes chapter 327A provides three home warranties to purchasers of new residential construction. Act of May 5, 1977, ch. 65, 1977 Minn. Laws 107, 108 (codified at Minn. Stat. §§ 327A.01–.07 (2002)). These warranties impose liability upon the builder for defects occurring during an applicable warranty period. Minn.Stat. § 327A.02, subd. 1. These statutory warranties begin to run from the time the initial vendee first occupies or takes title to the dwelling, whichever is earlier. Minn.Stat. § 327A.01, subd. 8 (2002). While the warranties run with the dwelling and extend to subsequent purchasers, the warranty

period is not reset when a subsequent purchaser occupies or takes title to the property. Minn.Stat. § 327A.01, subds. 6, 8.

The warranty at issue in this case is the 10–year warranty, which provides:

> In every sale of a completed dwelling, and in every contract for the sale of a dwelling to be completed, the vendor shall warrant to the vendee that during the 10–year period from and after the warranty date, the dwelling shall be free from major construction defects.

Minn.Stat. § 327A.02, subd 1(c) (1990).[6] "Major construction defect" is defined as "actual damage to the load-bearing portion of the dwelling or the home improvement, including damage due to subsidence, expansion or lateral movement of the soil, which affects the load-bearing function and which vitally affects or is imminently likely to vitally affect use of the dwelling or the home improvement for residential purposes." Minn.Stat. § 327A.01 subd. 5 (2002). The definition of "major construction defect" "does not include damage due to movement of the soil caused by flood, earthquake or other natural disaster." *Id.*

The "warranty date" is defined as

the date from and after which the statutory warranties provided in section 327A.02 shall be effective, and is the earliest of

(a) The date of the initial vendee's first occupancy of the dwelling; or

(b) The date on which the initial vendee takes legal or equitable title in the dwelling.

Minn.Stat. § 327A.01, subd. 8. Minn.Stat. § 327A.03 also sets forth 16 categories of damage to which § 327A.02 does not apply.

■ In support of its contention that Minn.Stat. § 327A.02, subd. 1(c), requires that the alleged construction defect must be created during and be present upon completion of construction, R&I points out that Minn.Stat. § 327A.02, subd. 1(c), provides that the 10–year warranty period runs *"from and after* the warranty date." (Emphasis added.) According to R&I, this definition requires that the defect must exist both immediately after construction is completed and persist thereafter. We disagree. The phrase "from and after" is a phrase commonly used by the Minnesota Legislature to set out the computation of time. In computing a period of time "from and after" a specified event—in this case the warranty date—the date of the event is excluded and the computation of time is commenced the following day. *Parkinson v. Brandenburgh,* 35 Minn. 294, 296, 28 N.W. 919, 920 (1886). By employing the phrase "from and after," the legislature was merely indicating that the warranty period commences on the day following the warranty date.

R&I contends that Minn.Stat. § 327A.02, subd 1(c), "contemplates a defect, created during and present upon completion of construction, that causes damage

---

**6.** In this case, we are called on to apply the statutory new home warranty as it existed in 1990, the year in which the home at issue was built. In 2001, Minn.Stat. § 327A.02, subd. 1(c), was amended to read:

> In every sale of a completed dwelling, and in every contract for the sale of a dwelling to be completed, the vendor shall warrant that during the 10–year period from and after the warranty date, the

dwelling shall be free from major construction defects *due to noncompliance with building standards.*

Act of May 29, 2001, ch. 207, § 9, 2001 Minn. Laws 849, 853 (emphasis added). The qualifier "due to noncompliance with building standards" in Minn.Stat. § 327A.02, subd. 1(c), was not part of the statute as it existed in 1990, and is therefore not a basis for the decision we announce today.

to load-bearing portions of the dwelling within the warranty period." In support of this contention, R&I urges us to read additional words into the definition of major construction defect, changing the definition to read "actual damage to [*and caused by a defect in*] the load-bearing portion of the dwelling." We will not supply words that the legislature either purposely omitted or inadvertently left out. *Genin v. 1996 Mercury Marquis,* 622 N.W.2d 114, 117 (Minn.2001). Instead, we apply the plain meaning of the words of the statute and hold that subject to the specifically enumerated exclusions and exceptions provided in Minn.Stat. § 327A.03, the definition of "major construction defect" in the statutory new home warranty extends to actual damage to load-bearing portions of the dwelling occurring after the completion of construction.

■ Our conclusion that the legislature intended to define "major construction defect" broadly is supported by statutory provisions found elsewhere in chapter 327A. Statutory provisions must be interpreted in light of each other. *In re Condemnation by City of Minneapolis,* 632 N.W.2d 586, 591 (Minn.2001). First, Minn. Stat. § 327A.01, subd. 5, itself provides that actual damage to the load-bearing portion of the dwelling includes damage "due to subsidence, expansion or lateral movement of the soil." By definition, such damage occurs *after* construction is completed. This statutory provision would be unnecessary were we to adopt R&I's interpretation of the definition of "major construction defect."

Second, Minn.Stat. § 327A.03 provides a list of 16 exclusions to vendor liability, several of which may apply to the facts of this case. For example, the vendor is not liable for loss or damage caused by negligence on the part of the dwelling owner or failure of the owner to properly maintain the dwelling in good repair. Minn.Stat. § 327A.03(g), (j). Likewise, the vendor is not responsible for damage which the owner has not taken timely action to minimize. Minn.Stat. § 327A.03(k). Furthermore, the owner cannot recover if the owner fails to report the loss or damage to the vendor in writing within 6 months of discovery. Minn.Stat. § 327A.03(a). If the legislature had intended "major construction defect" to have a narrow meaning such as the one advocated by R&I, there would have been no need for the legislature to have provided for so many exclusions.

The Vlahoses offered an affidavit of a licensed professional engineer which detailed

numerous and serious construction defects with the house including, without limitation, the existence of severe structural damage to the house, substantial water infiltration, substantial wall and wood decay and rot, extensive mold growth, substantial moisture and active water infiltration from improper and defective construction of patio decks and decay of interior floor trusses, ceiling trusses *and other load-bearing supports* throughout the house, all of which posed serious hazards and vitally affected [the Vlahoses'] use and enjoyment of the house for residential purposes.

(Emphasis added.) Viewing this evidence in a light most favorable to the Vlahoses, we conclude that the Vlahoses have presented evidence which precludes an entry of summary judgment against them.

Reversed and remanded.

GILBERT, J., took no part in the consideration or decision of this case.