STATE OF MINNESOTA

IN SUPREME COURT

A14-0724

Court of Appeals

Gildea, C.J.
Took no part, Hudson, J.

328 Barry Avenue, LLC,

Appellant,

vs.

Filed: November 25, 2015
Office of Appellate Courts

Nolan Properties Group, LLC,
defendant and third party plaintiff,

Respondent,

vs.

Carciofini Company,
third party defendant,

Respondent,

Marvin Windows, Inc.,
third party defendant,

Respondent,

Minuti-Ogle Co., Inc.,
third party defendant,

Respondent,

R.T.L Construction, Inc.,
third party defendant,

Respondent,

1

Stellar Contractors, Inc. d/b/a Stellar
Concrete & Masonry, third party defendant,

Respondent.

_____

J. Robert Keena, Joseph M. Barnett, Hellmuth & Johnson, PLLC, Edina, Minnesota, for appellant.

Bradley D. Fisher, Fisher, Bren & Sheridan, LLP, Minneapolis, Minnesota, for respondent Nolan Properties Group, LLC.

Cara C. Passaro, Murphy & Passaro, PA, Mendota Heights, Minnesota, for respondent Carciofini Company.

Michael E. Obermueller, Winthrop & Weinstine, P.A., Minneapolis, Minnesota, for respondent Marvin Windows, Inc.

Justin P. Short, Kerry C. Raymond, Best & Flanagan LLP, Minneapolis, Minnesota, for respondent Minuti-Ogle Co., Inc.

Neal J. Robinson, Coon Rapids, Minnesota, for respondent R.T.L. Construction, Inc.

_____

S Y L L A B U S

1.    Under the plain language of Minn. Stat. § 541.051, subd. 1 (2014), the statute of limitations for claims of defective construction can begin to run before substantial completion of the construction.

2.    The building owner's assertion that a leak had been remedied, when taken in the context of an ongoing construction project and the absence of record evidence of ongoing water problems, created a genuine issue of material fact as to when the injury was discovered under Minn. Stat. § 541.051, subd. 1.

Affirmed in part, reversed in part, and remanded.

2

O P I N I O N

GILDEA, Chief Justice.

The questions presented in this case concern the interpretation and application of the 2-year statute of limitations in Minn. Stat. § 541.051, subd. 1(a) (2014), which applies to actions "arising out of the defective and unsafe condition of an improvement to real property." Appellant 328 Barry Avenue, LLC (328 LLC) used respondent Nolan Properties Group, LLC (NPG) as the general contractor for the construction of a building. The building had problems with water intrusion. 328 LLC brought an action claiming that NPG's actions as general contractor were negligent. The district court dismissed the action as untimely under Minn. Stat. § 541.051, subd. 1(a). The court of appeals affirmed. Although we agree with the court of appeals that the plain language of Minn. Stat. § 541.051, subd. 1 does not require that construction be substantially complete to start the running of the statute of limitations, we reverse in part and remand because we conclude that there is a genuine issue of material fact as to when 328 LLC discovered its injury.

In 2008, construction began on a three-story commercial building located in Wayzata, Minnesota. The building site belonged to 328 Barry Avenue, LLC, a company solely owned by John Nolan. 328 LLC selected NPG, another company solely owned by

3

Nolan, to serve as the general contractor during construction of the building.[1] According to 328 LLC, NPG's duties as general contractor included hiring and supervising subcontractors and selecting construction materials. NPG did not personally perform any of the construction work, but claims that it was qualified to select, hire, and supervise subcontractors and ensure that the subcontractors' work was completed according to the contract documents. NPG did not have a written contract with 328 LLC, but NPG did enter into written contracts with the subcontractors on the project, including respondents Carciofini Company, Marvin Windows, Inc., Minuti-Ogle Co., Inc., and R.T.L Construction, Inc.

In October 2009, during what Nolan referred to as the "punch list" phase of construction, NPG contacted Minuti-Ogle Co. (MOC), the stucco contractor. NPG asked MOC about a leak around an east elevation window, indicating that there was "some water" on the property. A representative from MOC visited the property and, after observing "soaking wet" insulation and water "coming out by the window," told NPG, "I think you've got a window issue." A few days later, NPG again contacted MOC regarding leakage at the same location. At NPG's request, the same MOC representative returned to the property and applied small amounts of silicone sealant to the window corners, although he warned NPG that he feared that absence of sealant was not the issue.

On October 30, 2 weeks after his previous visit, the MOC representative received an email from NPG asking him to return to the property because water was again entering

---

[1]   The parties make no argument regarding the corporate formalities of Nolan's companies, and therefore issues about any identity of interest between 328 LLC and NPG are not before us.

4

around the same window. In early November 2009, the MOC representative and two representatives of NPG performed a garden-hose "spray test" to determine the location of the leak. The test revealed water "slowly seep[ing] in on the right side of the [same] window." Although MOC testified that it performed no work during this visit to repair or correct the issue, and NPG produced no specific evidence that NPG or any subcontractor attempted to repair the leak, the record does not reflect that there were any water leaks around the window or in other parts of the building between November 2009 and August 2010. Nolan, testifying on behalf of NPG, stated that "whatever [the subcontractors] did, they addressed [the leak] to [NPG's] satisfaction because I didn't hear anything, I didn't see anything . . . and we paid everybody. That issue was solved and done." Nolan testified that 328 LLC observed no leaks or water intrusion damage from November 2009 until August 2010.

The City of Wayzata issued a certificate of occupancy for the building in January 2010, although parts of the building were still unfinished. The parties agree, however, that construction was substantially complete by May 2010 when 328 LLC began to occupy the building for commercial purposes.

In August 2010, 328 LLC noticed water on the floor of the building. NPG again contacted the MOC representative who had observed the window leak in 2009, stating that "[t]his problem with water leaking around the windows needs to be solved." Upon arrival at the property, the MOC representative noticed "water in the same spot" as the previous fall, and, as he said he did earlier, suggested that NPG "get [the] window tested."

Throughout 2011 and 2012, NPG and 328 LLC hired a number of experts to investigate the extent and cause of the water damage to the building. A report released in June 2011 documented window leaks at multiple east and west elevation locations, the presence of "unspecified" building materials, and installation of materials contrary to project specifications. Invasive cuts into the stucco wall-covering revealed saturated sheathing and tar paper, as well as wet wood framing around the windows. An additional company hired by NPG to inspect the property in May and June of 2012 found heightened moisture levels in test sites around windows, stucco breaking away from beams, gaps around deck supports, and unsealed window joints.

Based on these reports, 328 LLC brought suit against NPG on June 14, 2012, alleging failure to exercise reasonable care in performing its duties as general contractor, including the negligent supervision of subcontractors and the negligent selection of building materials. NPG filed a third-party complaint against the respondent subcontractors for contribution and indemnity.

NPG and the subcontractors moved for summary judgment. The district court granted summary judgment, concluding that the negligence action was untimely under the 2-year statute of limitations for improvements to real property in Minn. Stat. § 541.051, subd. 1(a). As a threshold matter, the court rejected 328 LLC's argument that a claim based on property damage cannot accrue prior to substantial completion of the construction. The court also concluded that there was "no genuine issue of material fact regarding 328 LLC's discovery of the defect." The court determined that 328 LLC discovered an actionable injury in the fall of 2009, because the water intrusion in August

6

2010 was "the same injury" as the water intrusion in the fall of 2009. The court also found that 328 LLC did not produce any evidence suggesting that it was reasonable to believe that the fall-2009 leak had been remedied or repaired. Therefore, because 328 LLC did not commence the negligence action until June 2012, the court ruled that 328 LLC's action was untimely.

The court of appeals affirmed. *328 Barry Ave., LLC v. Nolan Prop. Grp., LLC*, No. A14-0724, 2015 WL 404630 (Minn. App. Feb. 2, 2015). The court of appeals determined that "[t]he district court properly concluded that construction need not be completed before the start of the two-year limitation period." *Id.* at *5. The court of appeals also held that "[t]he district court did not err in determining that there were no genuine issues of material fact regarding 328 [LLC]'s knowledge of its injury in October 2009 and that the statute of limitations began to run at that time." *Id.* at *4. We granted 328 LLC's petition for review.

On appeal, 328 LLC contends that a claim cannot accrue under Minn. Stat. § 541.051, subd. 1(a), prior to substantial completion of the construction. 328 LLC also argues that even if a cause of action could accrue under the statute prior to substantial completion, the district court erred in granting summary judgment because there was a genuine issue of material fact regarding whether 328 LLC discovered an actionable injury in the fall of 2009. We consider each issue in turn.

I.

We turn first to the issue of statutory interpretation. The statute of limitations applicable to claims of defective construction is found in Minn. Stat. § 541.051 (2014).

7

The statute provides, in relevant part, that "no action by any person in contract, tort, or otherwise to recover damages for any injury to property . . . arising out of the defective and unsafe condition of an improvement to real property, shall be brought . . . more than two years after discovery of the injury." Minn. Stat. § 541.051, subd. 1(a). At issue is whether the courts below correctly concluded that the statute of limitations can begin to run during construction of a building, before substantial completion of the construction.

328 LLC asks us to reverse summary judgment, arguing that the statute of limitations in Minn. Stat. § 541.051, subd. 1(a), cannot be triggered prior to substantial completion of a construction project. 328 LLC asserts that defects found during ongoing construction, such as a leak near a window, are "merely circumstance[s] whereby some piece of work ha[s] yet to be completed." According to 328 LLC, discovery of a defect during construction is different than the discovery of an actionable injury and is therefore insufficient to trigger the limitations period. Respondents argue that the plain language of the statute does not condition the commencement of the statute of limitations on substantial completion of the construction.

The parties' arguments present an issue of statutory interpretation, which we review de novo. *Great River Energy v. Swedzinski*, 860 N.W.2d 362, 364 (Minn. 2014). When interpreting statutes, the overarching goal is to determine and effectuate the Legislature's intent in enacting the statute. Minn. Stat. § 645.16 (2014). We interpret a statute "as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant." *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 496 (Minn. 2009) (quoting *In re*

8

*UnitedHealth Grp., Inc.*, 754 N.W.2d 544, 563 (Minn. 2008)). If the meaning of the statute is clear, the plain language of the statute controls. *Molloy v. Meier*, 679 N.W.2d 711, 723 (Minn. 2004).

In this case, the plain language of the statute predicates the accrual of a cause of action, and the commencement of the statute of limitations, on the "discovery of the *injury*." Minn. Stat. § 541.051, subd. 1(a) (emphasis added). The statute goes on to explicitly state that "a cause of action accrues upon discovery of the *injury*." *Id.*, subd. 1(c) (emphasis added). The statute does not mention "substantial completion" in connection with the statute of limitations. Instead, the term "substantial completion" appears only in the statute of repose, which provides that a cause of action cannot "accrue more than ten years after substantial completion of the construction." *Id.*, subd. 1(a) (stating that the "[d]ate of substantial completion" is "determined by the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use the improvement for the intended purpose").

328 LLC concedes that the term "substantial completion" does not appear in the language of the statute of limitations provision. Rather, 328 LLC argues that a project must be substantially complete before an owner can discover an *actionable* injury, as opposed to a defective condition that may be remedied or repaired during the course of construction. But we cannot add words to an unambiguous statute under the guise of statutory interpretation. *Cty. of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn. 2013); *see also Great River Energy*, 860 N.W.2d at 364 (stating that we cannot add words to a statute that were intentionally or inadvertently omitted). Moreover, the Legislature's

9

inclusion of the "substantial completion" language in the statute of repose provision in Minn. Stat. § 541.051, subd. 1(a), but not in the statute of limitations provision, is evidence that the Legislature did not intend to condition the running of the 2-year statute of limitations on substantial completion of the construction. *See Seagate Tech., LLC v. W. Dig. Corp.*, 854 N.W.2d 750, 759 (Minn. 2014) (stating that "a condition expressly mentioned in one clause of a subdivision provides evidence that the Legislature did not intend for the condition to apply to other clauses in which the condition is not stated"); *In re Stadsvold*, 754 N.W.2d 323, 328-29 (Minn. 2008) (stating that "distinctions in language in the same context are presumed to be intentional"). Accordingly, we will not read the phrase "substantial completion" into the limitations provision in Minn. Stat. § 541.051, subd. 1(a).

328 LLC also points to our decision in *Vlahos v. R&I Construction of Bloomington, Inc.*, 676 N.W.2d 672, 678 (Minn. 2004), to support its position that a cause of action for property damage cannot accrue prior to substantial completion of a construction project. This reliance is misplaced. *Vlahos* was about the interpretation of Minn. Stat. § 541.051, subd. 4, which provides that actions based on breach of a statutory warranty or an express written warranty "shall be brought within two years of the discovery of the breach." In *Vlahos*, we held that the statute of limitations on a warranty claim began "to run when the homeowner discovers, or should have discovered, the builder's refusal or inability to ensure the home is free from major construction defects." 676 N.W.2d at 678. But 328 LLC did not bring a claim for breach of warranty;

10

328 LLC's complaint contains only a single count of negligence. Accordingly, *Vlahos* is inapposite to the discovery issue presented here.

Finally, 328 LLC contends that adopting the interpretation of the lower courts renders the statute of repose in Minn. Stat. § 541.051, subd. 1(a), superfluous. Specifically, 328 LLC argues that if the statute of limitations can begin to run during construction, there would be no need for a statute of repose because all claims would be barred within 2 years of substantial completion of construction. We disagree. Actions accrue, and thus the limitations period begins to run, when a party discovers an injury. Minn. Stat. § 541.051, subd. 1. This discovery may, as a factual matter, occur during construction, or the discovery may not occur until years after the project is completed. For example, federal courts have recognized instances in which property owners have reasonably discovered building defects years after substantial completion. *See, e.g.*, *Pamida, Inc. v. Christenson Bldg. Corp.*, 285 F.3d 701, 703-05 (8th Cir. 2002) (concluding that owners reasonably discovered foundation problems 6 years after substantial completion of the building); *Appletree Square 1 Ltd. P'ship v. W.R. Grace & Co.*, 815 F. Supp. 1266, 1274-79 (D. Minn. 1993) (finding that owners reasonably discovered an asbestos injury around 14 years after substantial completion of the building). In cases such as these, in which an injury is discovered after substantial completion of the construction, the statute of repose provides an outer time limit on liability for claims of defective construction.

In sum, the plain language of Minn. Stat. § 541.051, subd. 1(a), does not require that construction be substantially complete before defective construction claims accrue.

Such claims accrue, as the lower courts correctly held and the statute unambiguously provides, "upon discovery of the injury." Minn. Stat. § 541.051, subd. 1(c).[2]

## II.

We turn next to the question of whether the district court erred in concluding that 328 LLC discovered an actionable injury when NPG first discovered a leak near a window in the fall of 2009. Specifically, 328 LLC argues that even if we reject its statutory interpretation argument, there is nevertheless a genuine issue of material fact regarding the timing of the "discovery of the injury" under Minn. Stat. § 541.051, subd. 1(a). Although the parties agree that the "injury" at issue here is the water intrusion, the parties dispute whether the discovery of the leak in the fall of 2009 was sufficient to trigger the statute of limitations.

On appeal, "[w]e review a district court's decision to grant summary judgment de novo to determine whether any genuine issue of material fact exists and whether the district court correctly applied the law." *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 61 (Minn. 2014). At the summary judgment stage, we view the evidence in the light most favorable to the nonmoving party and resolve all doubts and factual inferences against the moving parties. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn. 1981). A genuine issue of fact exists when reasonable minds can draw different

---

[2] Precisely when a construction defect identified before substantial completion or final acceptance constitutes an actionable injury is a different question. The parties' written contracts (which may govern inspection, warranties, remedies, and dispute resolution at different stages of the project), among other things, may be relevant. In this case, however, there is no written general contract between 328 LLC and NPG, and 328 LLC asserts only a negligence claim against NPG.

12

conclusions from the evidence presented. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997).

The statute of limitations provision at issue generally provides that no action shall be brought "more than two years after discovery of the injury." Minn. Stat. § 541.051, subd. 1(a). The discovery of an injury is a question of fact that is not appropriate for resolution on summary judgment when reasonable minds can differ about the timing of the discovery of the injury. *See City of Willmar v. Short-Elliott-Hendrickson, Inc.*, 475 N.W.2d 73, 77 (Minn. 1991) (applying Minn. Stat. § 541.051, subd. 1 (1986)). We apply an objective standard to determine when a property owner knew or should have known, through the exercise of due diligence, of the injury. *See id.*; *cf. Vlahos*, 676 N.W.2d at 678-79 (applying an objective standard to claims for breach of warranty under Minn. Stat. § 541.051, subd. 4 (2002)).

328 LLC claims that it did not discover its injury—described as "water infiltration" problems—before August 2010. There is no question that 328 LLC was aware of a water leak near one of the windows in the fall of 2009. The district court concluded that there is no fact issue regarding 328 LLC's discovery of the injury because the water intrusion in August 2010 was the same injury as the water intrusion in the fall of 2009; therefore, 328 LLC was aware or should have been aware of its injury in the fall of 2009, more than 2 years before 328 LLC brought this action against NPG. 328 LLC argues that the district court erred in determining that the fall-2009 leak was the same injury as the widespread water intrusion discovered in August 2010. 328 LLC claims

13

that the fall-2009 leak was "an isolated leak," which was addressed to the general contractor's satisfaction during construction.

Respondents cite *Day Masonry v. Independent School District 347*, 781 N.W.2d 321, 334 (Minn. 2010), in support of their argument that a party need not know the precise nature or cause of an injury to be charged with knowledge of the injury as "long as [the party] is aware of some injury." According to respondents, 328 LLC and NPG were on notice of the leak issue in the fall of 2009, and due diligence compelled them to investigate further to determine the source of the leak. In *Day Masonry*, we held that the limitations period in Minn. Stat. § 541.051 began to run on a school district's non-warranty claims when it discovered a leakage problem in its new high school and became aware of "the need to take action to repair the problem." *Id*. at 334. We concluded that the claims were time-barred because the school district had discovered the leakage problem almost as soon as the high school opened, and the school district made efforts to have the leaks repaired, even if the school district was not aware of the extent of its injury. *Id*.

*Day Masonry* is distinguishable from the circumstances here. In this case, construction was ongoing when 328 LLC first discovered the water leak in the fall of 2009. As described by 328 LLC, the contracts between the general contractor NPG and the subcontractors provided that the building would be built "in a good and workmanlike manner, free from faults and defects." After discovering the water leak in the fall of 2009, NPG contacted one of the subcontractors, who came to the area of the leak on more than one occasion. On one of these visits, the subcontractor applied additional sealant.

14

Although the subcontractor stated that it told NPG (and therefore 328 LLC) that the sealant would not solve the problem, Nolan testified on behalf of both 328 LLC and NPG that he believed that all minor defects had been corrected during what he termed "the punch list" phase of construction, before the certificate of occupancy was issued in January 2010. Nolan pointed to a number of other issues, including weather seal issues on the doors, which had been corrected to NPG's satisfaction during the final phase of construction. Nolan also explained that NPG and the subcontractors had all been paid for the work on the project. Finally, the record contains no evidence of additional leaks for a period of approximately 10 months. On these alleged facts, one could conclude that the fall-2009 window leak had been repaired, so the actionable injury did not occur, and was not discovered, until August 2010. Considering the record as a whole and construing the evidence in the light most favorable to 328 LLC, we therefore conclude that there is a genuine issue of material fact concerning when 328 LLC discovered the injury.

In urging us to reach the opposite conclusion and affirm summary judgment, respondents categorize Nolan's statements as "mere averments" that do not raise a genuine issue of material fact. *See Citizens State Bank*, 849 N.W.2d at 61 (explaining that "the nonmoving party must do more than rest on averments" to defeat a summary judgment motion). We disagree. Nolan's testimony that he believed that the water leak had been remedied is not the "mere averment" respondents paint it to be. Specifically, construction activity was ongoing when 328 LLC noticed the leak in the fall of 2009. According to Nolan, he believed, based on interactions with the subcontractors as well as all the corrective work that took place during this time period, that the leakage problem

15

had been remedied.[3]   Our obligation at the summary judgment stage is to construe the evidence in the light most favorable to 328 LLC.  Given the lack of evidence of any leaks in the building for 10 months and the fact that construction activities were still being performed in the fall of 2009, we cannot say that reasonable minds could arrive at only one conclusion regarding when 328 LLC was aware, or should have been aware, of its injury.

Viewing the evidence in the light most favorable to 328 LLC and resolving all doubts and factual inferences against respondents, we conclude that 328 LLC has presented sufficient evidence to survive summary judgment on the timeliness of the action.  We therefore hold that the district court erred in granting summary judgment.[4]

Affirmed in part, reversed in part, and remanded.

HUDSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[3]     Respondents also point to *Lietz v. Northern States Power Co.*, 718 N.W.2d 865 (Minn. 2006), in support of their argument that 328 LLC clearly discovered its injury in the fall of 2009.  But *Lietz* did not involve the "discovery of the injury" provision in Minn. Stat. § 541.051, subd. 1(a); it involved statutory provisions that are not at issue here.  Specifically, *Lietz* considered whether an object needs to be completely installed in order to qualify as an "improvement to real property," and whether the damages in that case arose out of the "defective and unsafe condition" of the object.  *See* 718 N.W.2d at 871-72.  *Lietz*, therefore, is not helpful to the questions presented here.

[4]     Because we conclude that there is a material issue of fact regarding when 328 LLC discovered its injury, it is not necessary for us to address 328 LLC's alternative argument that respondents are equitably estopped from asserting the statute of limitations.

16